HAEGGQUIST & ECK, LLP
ALREEN HAEGGQUIST (221858)
  alreenh@haelaw.com
KATHLEEN A. HERKENHOFF (168562)
  kathleenh@haelaw.com
IAN PIKE (329183)
  ianp@haelaw.com
225 Broadway, Suite 2050
San Diego, California 92101
Telephone: (619) 342-8000
Facsimile:  (619) 342-7878

Attorneys for Plaintiff and Proposed Classes

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAREN'S CUSTOM GROOMING LLC, a California Limited Liability Company, On Behalf of Itself and On Behalf of Similarly Situated Businesses and Individuals,<br><br>          Plaintiff,<br><br>      v.<br><br>WELLS FARGO & COMPANY, a Delaware Corporation; WELLS FARGO BANK, NATIONAL ASSOCIATION; and DOES 1-10, Inclusive,<br><br>          Defendants. | Case No.:  **'20 CV 0956 LAB BGS**<br><br>CLASS ACTION COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF<br><br><br><br><br><br><br><br>DEMAND FOR JURY TRIAL |

Plaintiff Karen's Custom Grooming LLC ("KCG" or "Plaintiff") brings this action on behalf of itself, and all similarly situated businesses and individuals, against Defendants Wells Fargo & Company, Wells Fargo Bank, National Association and DOES 1-10, Inclusive (collectively "Wells Fargo" or "Defendants") to enjoin Defendants' unlawful and wrongful conduct, and to obtain redress for all businesses and individuals injured by Defendants' conduct, as detailed herein.  Plaintiff alleges events concerning Plaintiff's business operations, as well as Plaintiff's interaction with Defendants, based upon personal knowledge.  All other allegations are based upon information and belief, based upon the investigation conducted by Plaintiff's attorneys.  Plaintiff believes that additional evidentiary support exists for its allegations, given an opportunity for discovery.

**NATURE OF THE ACTION**

1.    Plaintiff, like many small businesses in America, applied to Wells Fargo to obtain loans to be made pursuant to the Paycheck Protection Program (the "PPP") that is part of Title I (at §1102) of the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act") (Public Law 116-136). [1]

---

[1]    https://www.congress.gov/116/bills/hr748/BILLS-116hr748enr.pdf.  Many of the provisions cited herein from the CARES Act amend the Small Business Act, which is set forth at 15 U.S.C. §636.  For ease of reference, Plaintiff will refer to the CARES Act, but also provide, where applicable, the cite to the relevant provision in 15 U.S.C. §636.

HAEGGQUIST & ECK, LLP

2

2.     The CARES Act is a major, first-of-its-kind piece of legislation designed to help stem the economic carnage wrought on America's small businesses due to the closures and lockdowns necessitated by the coronavirus.  Many consider the CARES Act, and its PPP program, as an emergency step to prevent what may ultimately become the second Great Depression.  The PPP was a lifeline being thrown to America's small businesses – in effect – America's "Main Street" businesses.  In turn, the lifeline thrown to small businesses was also a safety net to protect vulnerable American workers.

3.     Through the PPP in the CARES Act, $349 billion in loans ("PPP Loans") were to be made available to "eligible recipient[s]", defined as "an individual or entity that is eligible to receive a covered loan" pursuant to the PPP.  *See* CARES Act §1102(a)(2)(A)(iv).  *See also* 15 U.S.C. §636(a)(36)(A)(iv).

4.     The CARES Act includes, as "eligible" entities, certain small businesses, nonprofit organizations, Veterans organizations, and Tribal businesses (collectively herein "Eligible Businesses").  The CARES Act includes, as "eligible" individuals, self-employed persons and independent contractors (collectively herein "Eligible Individuals").  As used herein, the term "Eligible Recipients" includes both Eligible Businesses and Eligible Individuals.[2]

---

[2]     Additional requirements are set forth in the CARES Act and are detailed in SBA Form 2483.  *See* e.g. https://www.sba.gov/sites/default/files/2020-04/PPP-

5.    The CARES Act provides authority to the United States Small Business Administration (the "SBA") to receive the funding and the authority to guarantee 100% of the loans made pursuant to the PPP.  The PPP was intended to help Eligible Recipients weather the storm of the coronavirus pandemic by providing a "direct incentive for small businesses to keep their workers on the payroll" by providing SBA-guaranteed PPP Loans of up to $10 million to Eligible Recipients.[3]

6.    Applications for the PPP Loans (the "PPP Applications") are to be processed on a first-come, first-served basis as required by the rules governing the program (the "SBA Regulations").[4]  The importance and fairness of such a rule is self-evident in view of the monumental demand for relief needed to keep America's small businesses afloat.

7.    PPP Loans of the SBA-guaranteed funds were, and are, to be made and approved by various banking or financial entities (referred to as "lenders"), such as the Defendants, based upon authority delegated in the CARES Act by the SBA.  *See*

HAEGGQUIST & ECK, LLP

Borrower-Application-Form-Fillable.pdf (last visited May 21, 2020).  The CARES Act sets the "covered period" for PPP Loans as February 15, 2020 through June 30, 2020.  *See* CARES Act §1102(a)(2)(A)(iii); 15 U.S.C. §636(a)(36)(A)(iii).
[3]    https://www.sba.gov/funding-programs/loans/coronavirus-relief-options/paycheck-protection-program (last visited May 6, 2020).
[4]    https://home.treasury.gov/system/files/136/PPP--IFRN%20FINAL.pdf    (last visited May 6, 2020).

4

CARES Act §1102(a)(2)(F)(ii)(I); 15 U.S.C. §636(a)(36)(F)(ii)(I). Defendants affirmatively undertook to act as "lenders" pursuant to the PPP.[5]

8.     As a result of their affirmative act to serve as a lender for PPP Loans, Defendants knew, or were on notice of, the terms of the CARES Act and the SBA Regulations. Indeed, Defendants knew, or were on notice, that if they delayed processing PPP Applications, PPP loan applicants (*i.e.* Plaintiff and members of the "Classes", as defined herein) were in peril of losing their place in line to obtain these critical loans. Losing one's place in line could very well make the difference between a business being able to remain open and being able to continue to pay vital expenses such as payroll and rent, or having to close its operations.

9.     On April 3, 2020, applications for PPP Loans could be made, and Loan Applications were being processed.[6]

---

[5]     SBA Form 2484 details certain of the affirmations and steps lenders were required to make when processing the PPP Applications. https://www.sba.gov/sites/default/files/2020-04/PPP%20Lender%20Application%20Form_0.pdf (last visited May 21, 2020). SBA Form 3508 provides instructions for loan forgiveness applications. *See* https://www.sba.gov/sites/default/files/2020-05/3245-0407%20SBA%20Form%203508%20PPP%20Forgiveness%20Application.pdf (last visited May 21, 2020).

[6]     A landslide of PPP Applications were being made at banks able to successfully launch online applications. *See* https://www.nbcdfw.com/news/business/bank-of-americas-small-business-loan-portal-is-up-making-it-the-first-major-bank-to-begin-relief-program/2344898/ (last visited May 19, 2020) (the "April 3 NBCDFW Article"). Embedded within the April 3 NBCDFW Article is a link to a Wells Fargo statement representing that it had already received "hundreds of thousands of

HAEGGQUIST & ECK, LLP

HAEGGQUIST & ECK, LLP

10. Instead of acting consistently with the terms of the CARES Act and the SBA Regulations by processing PPP Loans to ensure adherence to the "first-come, first-served" mandate of the SBA Regulations, Wells Fargo placed several roadblocks that prevented and/or prejudicially delayed Plaintiff and members of the Classes in seeking to apply for PPP Loans.

11. First, Wells Fargo required that any applicant for a PPP Loan have a Wells Fargo business checking account as of February 15, 2020. This is not a requirement of the CARES Act.[7]

12. Second, Wells Fargo announced, on or about April 5, 2020, that it would reportedly "focus" on helping businesses with under fifty employees or nonprofit organizations to obtain PPP Loans. While such entities are intended recipients of the PPP Loans – they are not the only intended recipients in the pool of potentially Eligible Recipients – and therefore the limitation Wells Fargo was engrafting on the

---

applications" for PPP Loans. *See* https://update.wf.com/coronavirus/paycheckprotectionprogram/ (last visited May 19, 2020). In stark contrast to these "hundreds of thousands" of applications Wells Fargo is reported to have received on or about April 3, 2020, Plaintiff and others seeking to apply at Wells Fargo were reportedly unable to obtain an application for well over a week.

[7] Similarly, Wells Fargo required persons seeking PPP Loans to enroll in Wells Fargo Business Online.

ability to apply to obtain PPP Loans was not consistent with the terms of the CARES Act or the SBA Regulations.[8]

13.     Third, upon information and belief, Wells Fargo was not processing the PPP Applications based on what it directly represented to Plaintiff and members of the Classes, which was that it would place all applicants in a "queue based upon when" they submitted their "initial interest" in applying for PPP Loans through Wells Fargo, and that it would "work[] through the queue in the order in which customers submitted their initial interest."[9] Upon information and belief, Wells Fargo was not following the "queue" consistent with its representations, but was instead often prioritizing PPP Applications from customers seeking higher loan amounts or from otherwise preferred customers, and thereby left those who desperately needed the loans – America's small businesses – out in the cold.

_____

[8]     As alleged herein, Plaintiff submits, on information and belief, that Wells Fargo did not even comply with its representation that it would "focus" its assistance in providing PPP Loans to these groups.

[9]     As detailed herein, Wells Fargo reportedly maintained a list of persons, in some order based upon when they contacted Wells Fargo, who expressed an interest in applying for a PPP Loan.  This list purportedly formed the "queue".  For ease of reference herein, Plaintiff will refer to the list not as an "interest list", but rather as the queue of those seeking to submit PPP Applications.  Therefore, in the definition of the Classes herein, the reference to those "who applied" for a PPP Loan with Defendants includes persons who contacted Wells Fargo to request an application, reportedly resulting in their placement on the interest list in a queue.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

HAEGGQUIST & ECK, LLP

14.     Further, while Wells Fargo has publicly represented that it is giving to charity any fees it was otherwise entitled to for originating PPP Loans,[10] the reality of its gatekeeper role on the PPP program was that it gave lenders such as Wells Fargo a chance to curry favor with larger or preferred business banking customers.  Upon information and belief, prioritizing certain customers may also have assisted Wells Fargo in avoiding significant unsecured loan losses.

15.     Wells Fargo also had (and continues to have) a dire need for positive public relations.  There are few better public relations undertakings than donating to charity.  Wells Fargo is still attempting to recover its reputation after a series of incidents and allegations over years questioning its treatment of its customers.  A recent article drew a pointed link between Wells Fargo's misconduct here in the PPP program, and its history of bad behavior, noting that "[i]n February [2020], the bank was ordered to pay $3 billion to settle a fake account scandal . . . ."[11]  In short, Wells

_____

[10]     Wells Fargo's reported undertaking to provide its PPP generated fees to charity appears to be the result of limitations put into place due to its "fake" loan scandal, discussed herein.   *See* https://www.cnbc.com/2020/04/08/the-fed-is-lifting-wells-fargos-asset-cap-so-it-can-help-lend-to-small-business.html  (last visited May 9, 2020).

[11]     https://www.pymnts.com/news/security-and-risk/2020/federal-state-investigators-question-wells-fargo-over-ppp-loans/  (last visited May 12, 2020). Notably, Wells Fargo's history of misconduct resulted it an initial limitation on the amount it could provide in PPP Loans.  https://www.cnbc.com/2020/04/08/the-fed-is-lifting-wells-fargos-asset-cap-so-it-can-help-lend-to-small-business.html   (last visited May 9, 2020).

Fargo historically has faced many allegations of mistreating its customers.  The PPP program provided Wells Fargo with another means by which to engage in misconduct.

16.    In addition to Wells Fargo's misconduct alleged herein, Wells Fargo – whether by design or negligence – was purportedly not able to, or declined to, timely host an active webpage with a link to a PPP Application in order to permit all those seeking PPP Loans to simply apply.  As detailed herein, Plaintiff was told by Wells Fargo's agents that it had to make an online expression of interest or request for a PPP Application, but then experienced delays by Wells Fargo in even being able to host an active website "landing page" on which to submit that expression of interest.[12]  Ultimately, once the website was even active to permit Plaintiff to submit an expression of interest, it would take nearly another week for Wells Fargo to provide Plaintiff with a PPP Application.  By that time, the initial CARES Act funding of PPP had been depleted.

17.    Wells Fargo's intentional and/or negligent misconduct prevented and/or delayed Plaintiff and other members of the Classes from submitting their PPP Applications to other lenders, and from being able to make reliable plans on how to conduct their business operations while waiting for the PPP Loans.

[12]    As alleged herein, the professed "delays" in Wells Fargo's ability to host an active website landing page in order to permit Plaintiff to apply are, upon information and belief, false statements given that various news media sources have indicated that Wells Fargo was already processing PPP Applications for others, while telling Plaintiff that it had to wait to be able to access the website.

HAEGGQUIST & ECK, LLP

18.     As a result of Wells Fargo's misconduct, Plaintiff and other members of the proposed Classes (as defined herein), were unable to have their PPP Application timely submitted to obtain PPP Loans when they were first made available nationwide on April 3, 2020, and many were unable to ever submit a PPP Application (much less obtain a PPP Loan) by the time the $349 billion in initial loan funding through the PPP was reportedly depleted on April 16, 2020.

19.     It appears that Wells Fargo's misconduct is not going unnoticed by governmental authorities either.  On May 5, 2020, Wells Fargo revealed that it was under investigation related to the PPP program.[13]

20.     Plaintiff brings this action on behalf of a Nationwide Class and a California Sub-Class (as defined below, and collectively the "Classes"), consisting of businesses and persons (referred to herein as "Eligible Recipients") who contacted Defendants to apply for PPP Loans, and whose PPP Applications were delayed and/or were not processed by Defendants in the order in which they were received in accordance with SBA Regulations for the PPP program.

---

[13]     *See*     https://www.reuters.com/article/us-wells-fargo-loans/wells-fargo-gets-federal-inquiries-over-handling-of-ppp-loans-idUSKBN22H2V9 (last visited May 12, 2020).  In addition, the rampant provision of PPP Loans to businesses that did not meet the applicable CARES Act standards has resulted in concerns over possible criminal prosecution for those businesses that do not return the loaned funds within a set time period.  https://news.yahoo.com/small-business-loan-deadline-poses-121836781.html (last visited May 14, 2020).

HAEGGQUIST & ECK, LLP

21.     Through this action, Plaintiff seeks compensation for the harms caused by Defendants' misconduct alleged herein, injunctive relief, and all other relief the Court deems appropriate.

22.     Specifically, Plaintiff brings actions on behalf of the Classes for: (1) violations of California Business and Professions Code §17200, *et seq*. (California's Unfair Competition Law (the "UCL")); (2) violations of California Business and Professions Code §17500, *et seq*. (California's False Advertising Law (the "FAL")); (3) violations of California Civil Code §1573; (4) fraud or deceit (intentional misrepresentation, fraudulent concealment, negligent misrepresentation, and false promise); (5) breach of fiduciary duty; (6) negligence; (7) promissory estoppel; and (8) unjust enrichment.

## JURISDICTION AND VENUE

23.     This Court has original jurisdiction over this Action under the Class Action Fairness Act, 28 U.S.C. §l332(d), because this is a class action in which: (1) at least some members of the proposed Classes have different citizenship from Defendant(s); (2) the members of the proposed Classes consists of more than 100 persons or entities; and (3) the claims of the members of the proposed Classes exceed $5,000,000 in the aggregate.

24.     This Court has personal jurisdiction over Defendants because Defendants do business in this District and a substantial number of the events giving rise to the claims alleged herein took place in this District.

25.    Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the alleged claims occurred in this District given that Plaintiff and members of the Classes applied for the subject PPP Loans while in this District, Defendants marketed and promoted the PPP Loans in this District, and Defendants received PPP Applications from Plaintiff and other persons within this District.

**PARTIES**

26.    Plaintiff Karen's Custom Grooming LLC is a California Limited Liability Company with its principal place of business located in Carlsbad, California. KCG is a small business that undertakes pet grooming and other related services.  At the time KCG applied for a PPP Loan through Wells Fargo, it met the criteria for funding under the PPP provisions of the CARES Act and the applicable SBA Regulations.  In addition, at the time of its PPP Application, KCG had maintained a business account at Wells Fargo for several years.   In reliance on Defendants' statements, including their false and deceptive advertising and marketing, Plaintiff contacted Wells Fargo to make a PPP Application as early as March 30, 2020, but due to the conduct alleged herein by Wells Fargo, was not able to receive a PPP Application until April 15, 2020.  Ultimately, Plaintiff submitted a PPP Application through Wells Fargo on April 16, 2020, at approximately the same time as the $349 billion in initial loan funding through the PPP of the CARES Act was exhausted.

27.     Defendant Wells Fargo & Company ("WFC"), a Delaware Corporation, is the parent of all Wells Fargo entities. WFC is a diversified financial services company providing banking, insurance, investments, mortgage banking, and consumer finance to individuals, businesses, and institutions in all 50 states and internationally. WFC's principal executive offices are located at 420 Montgomery Street, San Francisco, California 94104.  Through its subsidiaries, WFC conducts substantial business in the State of California, including within this District.

28.     Defendant Wells Fargo Bank, National Association ("WFB"), is the main banking arm of WFC, and it also has executive offices at 420 Montgomery Street, San Francisco, California 94104.  According to information currently available online with the California Secretary of State, WFB's main business address is at 101 North Phillips Avenue, Sioux Falls, South Dakota 57104.  WFB conducts substantial business in the State of California, including within this District.

29.     When in this Complaint reference is made to any act of any Defendant, such shall be deemed to mean that officers, directors, agents, employees, or representatives of the Defendant named in this lawsuit committed or authorized such acts, or failed and omitted to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation, or control of the affairs of the Defendant, and did so while acting within the scope of their employment or agency.

13

30.     Plaintiff is unaware of the names, identities, or capacities of the Defendants named as DOES 1-10, Inclusive, but is informed and believes and thereon alleges that each such fictitiously-named Defendant is responsible in some manner for the damages and abridgement of rights described in this Complaint.  Plaintiff will amend this Complaint to state the true names, identities, or capacities of such fictitiously-named Defendants when ascertained.

## FACTUAL ALLEGATIONS

31.     On Friday, March 27, 2020, the CARES Act became law. The CARES Act includes the PPP program, a $349 billion loan program for Eligible Recipients. Pursuant to the PPP program, the SBA received funding and authority to modify existing loan programs and establish a new loan program to assist Eligible Recipients nationwide that are adversely impacted by the Coronavirus Disease 2019 ("COVID-19") emergency.[14]   The PPP Loans may provide loan forgiveness for Eligible Recipients that retain employees, or that rehire employees, by June 30, 2020.

32.     The CARES Act was designed to provide PPP Loans to support these Eligible Recipients, comprised of mostly small businesses, particularly rural businesses, veteran owned businesses, woman owned businesses, and businesses owned by socially and economically disadvantaged persons.[15]

HAEGGQUIST & ECK, LLP

---

[14]     https://www.sba.gov/sites/default/files/2020-04/Interim-Final-Rule-04%2024%2020.pdf.

[15]     *See* H.R. 748 (the "CARES Act") at §1102(a)(P)(iv).

14

33.     PPP Loans for Eligible Recipients are made and approved by specified banking and financial institutions (referred to as "lenders"), as detailed in the CARES Act.   *See*   CARES   Act   §1102(a)(2)(F)(ii)(I);   15   U.S.C.   §636(a)(36)(F)(ii)(I). Defendants affirmatively undertook to act as "lenders" pursuant to the PPP.

34.     On Monday, March 30, 2020, at the start of the business day, Plaintiff's agent and sole owner, Ms. Angela Schoonover ("Schoonover") contacted Wells Fargo (via its agent/employee, Zachary Sharp) to inquire about a PPP Loan for Plaintiff. Plaintiff had a pre-existing, long standing business account with Wells Fargo.

35.     On April 1, 2020, Plaintiff (via Ms. Schoonover) continued to contact Mr. Sharp at Wells Fargo, again emphasizing that Plaintiff wanted one of the PPP Loans that were to become available on April 3, 2020.

36.     On April 2, 2020, Plaintiff again contacted Wells Fargo, via its agent, Tyler J. Turk ("Turk"), to again ask if it was possible to apply for a PPP Loan for Plaintiff.  Mr. Turk, on behalf of Wells Fargo, emailed Plaintiff back that Wells Fargo had just launched the "landing page for the PPP", and when it was live, Plaintiff could apply from that site.

37.     On April 3, 2020, Plaintiff again contacted Mr. Turk at Wells Fargo, in writing, to ask when the Wells Fargo webpage would launch, noting that Plaintiff was

HAEGGQUIST & ECK, LLP

15

concerned because the PPP Loans were "first come first serve."[16]  Plaintiff also noted that the SBA had opened up the loan application process, that "other banks" were processing loans as of that date (April 3, 2020), but that the other banks "only accept current clients."  As Plaintiff stated to Mr. Turk, "[i]f wells Fargo is behind on this it puts all of their account holders at a disadvantage."  Plaintiff asked "[w]hy aren't they on top of this?  Is there anything we can do?"

38.    In response to Plaintiff's April 3, 2020 written concerns, Wells Fargo's Turk wrote to Plaintiff that the concerns were "under[stood]" and that "we are diligently working on getting the application process live and we ask that you check the website I sent you frequently for updates on the program and the application process."

39.    Plaintiff continued to monitor the Wells Fargo website page meticulously over the next several days.[17]

---

[16]    *See* SMALL BUSINESS ADMINISTRATION Interim Final Rule §m. [Docket No. SBA-2020-0015] 13 CFR Part 120 Business Loan Program Temporary Changes; Paycheck Protection Program RIN 3245-AH34.

[17]    While Plaintiff was told the website was not available, and was constantly checking for its launch, a report by one apparent customer or applicant has surfaced stating that they learned Wells Fargo was providing other persons with PPP Applications by at least April 4, 2020.  *See* https://crooksandliars.com/2020/04/ppp-loans-are-nightmare (last visited May 14, 2020).  *See also* https://www.newsweek.com/customers-fume-wells-fargo-bank-america-struggle-stimulus-loan-rollout-1496097 (last visited May 19, 2020); https://www.laweekly.com/some-small-businesses-hit-snags-accessing-ppp-loans/ (last visited May 19, 2020) (April 9, 2020 article reporting that "most of [Wells

40.     On April 5, 2020, during the time that Plaintiff was monitoring the Wells Fargo website, Wells Fargo issued a press release ("April 5 Release") quoting CEO, Charlie Scharf, stating in pertinent part that: "While all businesses have been impacted by this crisis, small businesses with fewer than 50 employees and nonprofits often have fewer resources. Therefore, we are focusing our efforts under the Paycheck Protection Program on these groups."[18]

41.     Although the "focus" stated by Wells Fargo in the April 5 Release is, outwardly honorable, neither the CARES Act nor the SBA Regulations permit Wells Fargo to pick and choose how to prioritize PPP Loan applicants.  Worse yet, it is evident that Wells Fargo did not prioritize such small businesses in processing the PPP Loans.  Plaintiff, an operation employing fewer than 20 persons, and who reached out to Wells Fargo early on the morning of Monday, March 30, 2020 (PDT), was still left without a PPP Loan when the $349 billion CARES Act PPP initial funding ran out.  Thus, regardless of Wells Fargo's "focus", it does not negate the harm caused by its failure to process the PPP Applications on a "first-come, first-served" basis or in a "queue."

---

Fargo's] customers did not know" the bank was accepting PPP loan applications on Sunday, April 5, 2020).  Indeed, as set forth in fn. 6, it appears that Wells Fargo may have received applications by April 3, 2020.
[18]*See* https://apnews.com/Business%20Wire/84b21d67ad9a4dd69bf953480c0295d2. (last visited May 12, 2020).

HAEGGQUIST & ECK, LLP

42.    The April 5 Release also represented that "Wells Fargo will review all expressions of interest submitted by customers via our online form through April 5 and provide them with updates in the coming days."[19] Wells Fargo also stated to potential applicants that "we encourage you to apply as quickly as possible." [20]

43.    On April 6, 2020, Plaintiff (care of its agent, Ms. Schoonover) received an email update from Wells Fargo (from "Wells Fargo Online alerts@notify.wellsfargo.com"). The April 6, 2020 email notice from Wells Fargo stated that it was "not able to begin your application at this time, but you remain in our queue based upon when you submitted your initial interest."

44.    Plaintiff received similar updates on April 8, 2020 from Wells Fargo (from the same email address), again promising that Plaintiff remained "in the queue based upon when you submitted your initial interest, and we continue to work through

_____

[19]    The April 5 Release also noted that Wells Fargo would be "target[ing] to distribute a total of $10 billion" to its small business customers pursuant to the PPP.

[20]    It was reported that, on Sunday, April 5, 2020, Wells Fargo had also stated that it would stop accepting applicants for PPP Loans because it had already received enough interest in applications to reach the threshold of $10 billion in loans it agreed to undertake. https://www.cbsnews.com/news/paycheck-protection-program-wells-fargo-small-business/ (last visited May 19, 2020). By April 8, 2020, however, the asset cap on Wells Fargo's ability to make more loans was lifted by the Federal Reserve, and Wells Fargo reportedly was able to continue to process PPP Applications. https://www.barrons.com/articles/wells-fargo-reprieve-fed-loans-small-business-stimulus-cares-act-51586364932 (last visited May 19, 2020). *See also* https://www.federalreserve.gov/newsevents/pressreleases/files/enf20200408a1.pdf?mod=article_inline (last visited May 19, 2020); https://newsroom.wf.com/press-release/community-banking-and-small-business/wells-fargo-expand-participation-paycheck (last visited May 19, 2020).

HAEGGQUIST & ECK, LLP

18

the queue in order."[21]  The April 8, 2020 update further stated that "[i]f you can apply through Wells Fargo, we will email you a link to start the application process."

45.     On April 10, 2020, Plaintiff again received an "update" from Wells Fargo, stating that Plaintiff remained in the queue, but that Wells Fargo was not able to begin Plaintiff's application "at this time."  The "update" again stated that "[i]f you can apply through Wells Fargo, we will email you a link to start the application process."

46.     On April 14, 2020, while Plaintiff was patiently waiting for Wells Fargo's online portal to release a PPP Application to permit it to apply for a PPP Loan, Wells Fargo's top executives were bragging to securities analysts about how Wells Fargo was helping small businesses obtain PPP Loans.

47.     On an April 14, 2020 analyst conference call to report results for the first fiscal quarter of 2020, Wells Fargo President and CEO Scharf stated that "[w]e've extended our participation in the PPP program and hope to provide significant relief to our small business customers.  We are quickly ramping up our processing capacity to respond to the significant demand we've seen."

---

[21]     The April 8, 2020 email also stated that "[y]our place in line is not impacted by the recent announcement that Wells Fargo can expand its participation in the Paycheck Protection Program, in response to the actions by the Federal Reserve.  You remain in the queue based upon when you submitted your initial interest, and we continue to work through that queue in order."

HAEGGQUIST & ECK, LLP

48.     Later on the same April 14, 2020 analyst conference call, Jefferies LLC analyst, Ken Usdin, asked if Wells Fargo was "truly able to provide all the help that your customers are asking for [in the PPP program] and how are you balancing that demand . . . ."  Wells Fargo's Senior Executive Vice President and CFO, John R. Shrewsberry, responded to Usdin that, "on the PPP front . . . I would describe this as unconstrained and in a position to help everybody who approaches us subject to the program, of course, having sufficient funding from a legislative perspective, but no constraints at Wells Fargo."

49.     Despite the glowing affirmations on April 14, 2020 to securities analysts that Wells Fargo was "quickly ramping" its ability to process PPP Applications, and that it was in a position to "help everybody", Wells Fargo had not even yet provided Plaintiff the ability to access an online application despite its constant effort to obtain one since March 30, 2020.  The claims that Defendants would "help everybody" who applied pursuant to the PPP were also false.  Wells Fargo had imposed a requirement that only those with a business checking account since February 15, 2020 could apply.

50.     Ultimately, it was not until April 15, 2020, at approximately 2:42 p.m. PDT, that Plaintiff received an email from Wells Fargo with a notice captioned "You can now apply for the Paycheck Protection Program."  The email notice further stated, "As a reminder, to apply you must have an eligible Wells Fargo Business Checking account as of February 15, 2020."

HAEGGQUIST & ECK, LLP

51.     The April 15, 2020 email notice from Wells Fargo to Plaintiff (via Schoonover) contained the same list of supporting documents that Wells Fargo had indicated in prior email notices that it would request, such as: Payroll tax filings; Payroll Tax form 941; Form 1099-Misc.; and Income and expenses from a sole proprietorship.  Plaintiff started the Wells Fargo PPP Application,[22] but was then told that Plaintiff's agent, Ms. Schoonover, would need to provide information on her household income, which caused further, unnecessary delay.

52.     On or about April 16, 2020, Plaintiff submitted a complete PPP Application to Wells Fargo to obtain a PPP Loan.  At approximately the same time, Plaintiff learned that the $349 billion in PPP Loan funds had been depleted.

53.     In short, Plaintiff is a longstanding Wells Fargo business checking account customer, is a business employing fewer than fifty (50) persons, and contacted Defendants by at least March 30, 2020 to inquire about submitting a PPP Application.  Even pursuant to the improper limits made by Defendants as to whom they would prioritize for PPP Loans, Plaintiff fit all requirements, yet was unable to obtain the necessary documentation from Wells Fargo to complete a PPP Application until April 15, 2020.

---

[22]     Plaintiff recalls answering all questions and making all certifications required on the PPP Application, and in a manner that would permit Plaintiff to be eligible for a PPP Loan.

HAEGGQUIST & ECK, LLP

HAEGGQUIST & ECK, LLP

54. While Plaintiff and other members of the Classes were prejudiced by Wells Fargo's misconduct and delays, PPP Loans were being made across the country. The SBA has issued documentation providing the following breakdowns on PPP Loans issued between the start of the program on April 3, 2020 up to April 13, 2020, and then from April 3, 2020 to April 16, 2020.

55. The SBA chart for approvals of PPP Loans through April 13, 2020:[23]

| LOAN SIZE | APPROVED LOANS | APPROVED DOLLARS | % OF COUNT | % OF AMOUNT |
|---|---|---|---|---|
| $150K and Under | 725,058 | $37,178,984,187 | 70.05% | 15.02% |
| >$150K – >$350K | 156,590 | $35,735,615,983 | 15.13% | 14.44% |
| >$350K – $1M | 102,473 | $59,291,602,643 | 9.90% | 23.95% |
| >$1M – $2M | 31,176 | $43,278,883,532 | 3.01% | 17.48% |
| >$2M - $5M | 16,516 | $49,288,997,593 | 1.60% | 19.91% |
| >$5M | 3,273 | $22,769,309,582 | 0.32% | 9.20% |

56. The SBA's chart for approvals of PPP Loans through April 16, 2020:[24]

| LOAN SIZE | APPROVED LOANS | APPROVED DOLLARS | % OF COUNT | % OF AMOUNT |
|---|---|---|---|---|
| $150K and Under | 1,229,893 | $58,321,791,761 | 74.03% | 17.04% |
| >$150K – >$350K | 224,061 | $50,926,354,675 | 13.49% | 14.88% |

---

[23]   https://www.sba.gov/sites/default/files/2020-04/PPP%20Report%20SBA%204.14.20%20%20-%20%20Read-Only.pdf.
[24]   https://www.sba.gov/sites/default/files/2020-04/PPP%20Deck%20copy.pdf.

22

| LOAN SIZE | APPROVED LOANS | APPROVED DOLLARS | % OF COUNT | % OF AMOUNT |
|---|---|---|---|---|
| >$350K – $1M | 140,197 | $80,628,410,796 | 8.44% | 23.56% |
| >$1M – $2M | 41,238 | $57,187,983,464 | 2.48% | 16.71% |
| >$2M – $5M | 21,566 | $64,315,474,825 | 1.30% | 18.79% |
| >$5M | 4,412 | $30,897,983,582 | 0.27% | 9.03% |

57.   The SBA charts demonstrate that the majority of the PPP Loans were concentrated at ranges above $150,000.   The charts also reflect an increase in processing of smaller loans of $150,000 at the end of the time period in which funding was available, indicating that smaller loans were not prioritized at the outset of the processing of PPP Loans.

| LOAN SIZE | APRIL 13, 2020 APPROVED LOANS | APRIL 16, 2020 APPROVED DOLLARS | % OF CHANGE |
|---|---|---|---|
| $150K and Under | 725,058 | 1,229,893 | 70% |
| >$150K – >$350K | 156,590 | 224,061 | 43% |
| >$350K – $1M | 102,473 | 140,197 | 37% |
| >$1M – $2M | 31,176 | 41,238 | 32% |
| >$2M – $5M | 16,516 | 21,566 | 31% |
| >$5M | 3,273 | 4,412 | 35% |

58.   LendingTree conducted a survey of 1,260 small business owners, after the first round of PPP funding was exhausted, and reported that although 60% of the small business respondents applied for PPP Loans, only 5% received funding.[25]   In

HAEGGQUIST & ECK, LLP

---

[25]   https://www.lendingtree.com/business/just-5-percent-small-businesses-received-ppp-money/ (last visited May 12, 2020).

sharp contrast, so many large businesses have received PPP Loans, that many are now facing threats of criminal prosecution if they do not return the funds.[26]

59.    On April 24, 2020, the Paycheck Protection Program and Health Care Enhancement Act (the "PPP Act") was signed into law (Public Law 116-139)[27], which, among other things, added an additional $310 billion in funding and permitted lenders to begin processing PPP Applications again on April 27, 2020.[28]

60.    Despite the additional $310 billion in funding by the PPP Act, and regardless of whether Plaintiff or any members of the Classes received funding after April 27, 2020, the harm to Plaintiff and members of the Classes is not remedied in that they lost the ability to use PPP funding during the period from April 3, 2020 to at least April 27, 2020.

61.    The CARES Act entitled lenders to receive origination fees of 5% on loans of not more than $350,000 (*i.e.* up to a $17,500 fee); 3% on loans of more than $350,000 and less than $2 million (*i.e.* up to a $60,000 fee); and 1% on loans of not less than $2 million (*i.e.* up to a $100,000 fee).  While Wells Fargo represented it will be giving its fees generated under the program to charity, Wells Fargo receives substantial marketing and other benefits from being able to advertise that it is helping

---

[26]    https://news.yahoo.com/small-business-loan-deadline-poses-121836781.html (last visited May 14, 2020).

[27]    https://www.congress.gov/bill/116th-congress/house-bill/266/text.

[28]    https://www.sba.gov/page/coronavirus-covid-19-small-business-guidance-loan-resources#section-header-0.

HAEGGQUIST & ECK, LLP

its small businesses during the COVID-19 pandemic. As also noted herein, selecting which customers to provide PPP Loans may have helped Defendants avoid loan losses.

62.     Upon information and belief, Wells Fargo prioritized those PPP Loans that curried favor with larger business customers, or customers that may have risked placing the Defendants with huge loan losses to record, and/or prioritized PPP Loans that would earn the highest origination fees, rather than processing PPP Applications on a "first-come, first-served" basis as required by SBA Regulations.  Such conduct is contrary to the representations made by Defendants to Plaintiff and members of the Classes, namely that their PPP Applications would be processed in the order in which they were received in the "queue".

63.     Defendants' conduct resulted in their unjust enrichment at the expense of small businesses and workers who would otherwise have been able to use the temporary funding of the PPP Loans to cover payroll costs, continue group health care benefits, pay employee salaries, pay interest on mortgage obligations, pay rent, pay utilities, or pay interest on debt obligations incurred before the covered period (February 15, 2020 and June 30, 2020) (collectively the "Expenses").

64.     Plaintiff and members of the putative Classes reasonably relied on Wells Fargo's affirmative representations, communications, and advertising in making the choice to apply for a PPP Loan through Defendants, not knowing that, contrary to those representations, Defendants would (upon information and belief) prioritize large

or preferred borrowers, making it less likely that Plaintiff and members of the Classes would be able to obtain a PPP Loan through Wells Fargo.

65.     As a result of the conduct of Wells Fargo, Plaintiff and members of the putative Classes suffered financial harm, wrongfully lost the opportunity to obtain funding that was likely to be forgiven pursuant to the PPP program, lost the time value of those available PPP funds, lost access to capital in an economic crisis that many are calling the second Great Depression, and generally lost economic opportunities to conduct business due to lack of operating capital.

66.     Plaintiff, on behalf of itself and the proposed Classes (as defined below), seeks, among other things, an injunction requiring Defendants to cease the unlawful activities alleged herein, an award of damages to Plaintiff and all members of the Classes, declaratory relief, as well as costs of suit and reasonable attorneys' fees.

## CLASS ACTION ALLEGATIONS

67.     Pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and (b)(3), Plaintiff brings its claims on behalf of itself and on behalf of all other persons similarly situated, and seeks to represent the following "Nationwide Class" and "California Sub-Class" (collectively the "Classes"):

a.     The Nationwide Class is defined as:

All Eligible Recipients, nationwide, who applied for a PPP Loan with Defendants and whose applications were not processed by Defendants in the order in which they were received by Defendants.

b.    The California Sub-Class is defined as:

All Eligible Recipients in the State of California who applied for a PPP Loan with Defendants and whose applications were not processed by Defendants in the order in which they were received by Defendants.

68.    Excluded from each of the Classes are the Defendants, their employees, officers, directors, legal representatives, heirs, successors, and wholly or partly owned subsidiaries or affiliated companies; Class Counsel and their employees; and the judicial officers and their immediate family members and associated court staff assigned to this Action.

69.    Plaintiff reserves the right to modify, expand, or amend the definitions of the proposed Classes after discovery and before the Court determines whether class certification is appropriate.

70.    Class certification of Plaintiff's claims is appropriate because Plaintiff can prove the elements of its claims on a class-wide basis using the same evidence as would prove those elements in individual actions alleging the same claims.

**Numerosity: Rule 23(a)(1)**

71.    This action satisfies the requirements of Federal Rules of Civil Procedure 23(a)(1). The Classes number at least in the hundreds, if not thousands, and consist of geographically dispersed business entities and persons who contacted Defendants to submit PPP Applications for PPP Loans through Defendants.  Defendants advertised to, and processed many PPP Loans from, applicants nationwide and in the State of California and, therefore, joinder of the members of the Classes is impracticable.

72.     The identity of members of the Classes is ascertainable, as the names and addresses of all members of the Classes be identified in Defendants' books and records, including Wells Fargo's online application portal.   Plaintiff anticipates providing appropriate notice to the certified Classes in compliance with Federal Rules of Civil Procedure 23(c)(2)(A) and/or (B), to be approved by the Court after class certification, or pursuant to court order under Federal Rules of Civil Procedure 23(d).

### Typicality: Rule 23(a)(3)

73.     This action satisfies the requirements of Federal Rules of Civil Procedure 23(a)(3) because Plaintiff's claims are typical of the claims of each of the members of the Classes in that they are based on the same underlying facts, events, and circumstances relating to Defendants' conduct.   Each member of the Classes, among other things, sought to apply and/or applied for a PPP Loan with Defendants using the same application process and their PPP Applications were not, based upon information and belief and subject to discovery, processed by Defendants in the order received or as promised by Defendants.

### Adequacy: Rule 23(a)(4)

74.     Plaintiff will fairly and adequately represent and protect the interests of the members of the Classes.   Plaintiff has retained counsel competent and experienced in complex class action litigation, including consumer protection litigation. Plaintiff intends to prosecute this action vigorously. Neither Plaintiff nor its counsel have interests that conflict with the interests of the other members of the Classes.

HAEGGQUIST & ECK, LLP

1

**Commonality and Predominance: Rule 23(a)(2)**

2

3       75.     This action satisfies the requirements of Federal Rules of Civil Procedure

4   23(a)(2) because there are questions of law and fact that are common to each of the

5   Classes. These common questions predominate over any questions affecting only

6   individual members of the Classes. The questions of law and fact common to the

7   Classes include, but are not limited to:

8

9           a.     Whether Defendants violated applicable law in administering,

10  processing, and handling PPP Applications and/or PPP Loans;

11

12          b.     Whether Defendants made false, misleading, and/or deceptive

13  misrepresentations and omissions regarding their administration, processing, and

14  handling of the PPP Applications and/or PPP Loans;

15

16          c.     Whether Defendants processed PPP Applications on a "first-

17  come, first served" basis;

18

19          d.     Whether Defendants processed PPP Applications in the order

20  received by Defendants, *i.e.* the "queue";

21          e.     Whether Defendants prioritized certain of its customers seeking

22  PPP Loans, or sought to maximize origination fees or avoid losses, as opposed to

23

24  processing PPP Applications in the order in which Defendants received requests (the

25  "queue") for PPP Applications from Plaintiff and members of the Classes;

26

27

28

HAEGGQUIST & ECK, LLP

f.      Whether Defendants' conduct alleged herein constitutes an "unfair" business practice under California Business and Professions Code §17200, *et seq.*;

g.      Whether Defendants' conduct alleged herein constitutes an "unlawful" business practice under California Business and Professions Code §17200, *et seq.*;

h.      Whether Defendants' conduct alleged herein constitute a "fraudulent" business practice under California Business and Professions Code §17200, *et seq.*;

i.      Whether Defendants' conduct alleged herein constitutes false advertising under California Business and Professions Code §17500, *et seq.*;

j.      Whether Defendants' affirmative act of serving as lender for the CARES Act PPP program created a duty on the part of Defendants to Plaintiff and members of the Classes;

k.      Whether the transactional nature of the PPP Applications process created a duty on the part of the Defendants to disclose material information to the PPP loan applicants (*i.e.* Plaintiff and members of the Classes);

l.      Whether Defendants disclosed to the PPP applicants (*i.e.* Plaintiff and members of the Classes) that the PPP Applications were not being processed on a "first-come, first-served" basis or in the order of the "queue";

HAEGGQUIST & ECK, LLP

30

m.   Whether Defendants possessed exclusive knowledge of material facts, with respect to the process for the PPP Applications for PPP Loans that could not have been known to the Plaintiff and members of the Classes (*i.e.* that the loan applications were not being processed "first-come, first-served", in a "queue", or that Defendants were prioritizing certain applicants over others);

n.   Whether Defendants actively concealed a material fact or facts from the Plaintiff and members of the Classes (*i.e.* that the PPP Applications were not being processed "first-come, first-served", in a "queue", or that Defendants were prioritizing certain applicants over others);

o.   Whether Defendants' conduct, as alleged herein, was intentional and knowing;

p.   Whether Defendants made a false promise to process PPP Applications in a "queue" or on a "first-come, first-served" basis;

q.   Whether Defendants' conduct, as alleged herein, constituted negligence or negligence per se;

r.   Whether promissory estoppel prevents Defendants from failing to comply with the promises they made to Plaintiff and members of the Classes;

s.   Whether Plaintiff and members of the Classes are entitled to damages and/or restitution; and, if so, what is the amount of revenues and/or profits Defendants received and/or was lost by Plaintiff and members of the Classes as a result of the conduct alleged herein;

t.      Whether Defendants are likely to continue to mislead PPP loan applicants (*i.e.* Plaintiff and members of the Classes) and members of the public by continuing to violate SBA Regulations regarding processing PPP Applications and PPP Loans;

u.      Whether Plaintiff and members of the Classes are entitled to an award of reasonable attorney's fees, pre-judgment interest, and costs of suit;

v.      Whether Plaintiff and members of the Classes are entitled to statutory and punitive damages; and

w.      Whether Plaintiff and members of the Classes are entitled to declaratory and injunctive relief.

### Superiority of Class Action: Rule 23(b)(3)

76.     This action satisfies the requirements of Federal Rules of Civil Procedure 23(b)(3). A class action is superior to other available methods for the fair and efficient adjudication of the rights of the members of the Classes. The joinder of individual members of the Classes is impracticable because of the large number of Class members who applied for PPP Loans through Defendants.  The burden imposed on the judicial system by individual litigation, and to Defendants, by even a small fraction of the members of the Classes, would be enormous.  In comparison to piecemeal litigation, class action litigation presents far fewer management difficulties, conserves the resources of both the judiciary and the parties, and protects the rights of each member of the Classes more effectively. The benefits to the parties,

the Court, and the public from class action litigation substantially outweigh the expenses, burdens, inconsistencies, economic infeasibility, and inefficiencies of individual litigation. Class adjudication is superior to other alternatives under Federal Rules of Civil Procedure 23(b)(3)(D). Class treatment will also avoid the substantial risk of inconsistent factual and legal determinations on the many issues in this action.

77.    Federal Rules of Civil Procedure Rule 23 provides the Court with the authority and flexibility to maximize the efficiencies and benefits of the class mechanism and reduce management challenges. The Court may, on motion of Plaintiff or on its own determination: certify nationwide and statewide classes for claims sharing common legal questions; use the provisions of Federal Rules of Civil Procedure 23(c)(4) to certify particular claims, issues, or common questions of law or of fact for class-wide adjudication; certify and adjudicate certain class claims; and use Federal Rules of Civil Procedure 23(c)(5) to divide any class into Subclasses.

78.    There are no individualized factual or legal issues for the Court to resolve that would prevent this case from proceeding as a class action. Class action treatment will allow those who are similarly situated to litigate their claims in the manner that is most efficient and economical for the parties and the Court. Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

**Certification: Rule 23(b)(2)**

79.    This Action satisfies the requirements of Federal Rules of Civil Procedure 23(b)(2). The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudication with respect to individual members of the Classes that would establish incompatible standards of conduct for the Defendants.

80.    In addition, the prosecution of separate actions by individual members of the Classes would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other members of the Classes who are not parties to the adjudications, or substantially impair or impede their ability to protect their interests.

81.    Defendants have also acted, or refused to act, on grounds generally applicable to the members of the Classes as a whole, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Classes as a whole.

**COUNT I**

**On Behalf of Plaintiff and Members of the Classes Against All Defendants**
**Violations of California's Unfair Competition Law ("UCL")**
**California Business and Professions Code §17200,** *et seq.*

82.    Plaintiff hereby incorporates by reference the foregoing allegations as if fully set forth herein.

HAEGGQUIST & ECK, LLP

83.    The UCL defines unfair competition to include any "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with §17500) of Part 3 of Division 7 of the Business and Professions Code." *See* California Business and Professions Code §17200.

## UNLAWFUL

84.    A business act or practice is "unlawful" pursuant to the UCL if it violates any other law or regulation.

85.    As alleged herein, Defendants advertised and represented their administration and processing of the PPP Applications for PPP Loans in a manner that violates California Business and Professions Code §17500, *et seq*. Defendants' conduct also constitutes fraud and negligence, as alleged herein, resulting in additional forms of unlawful conduct giving rise to claims pursuant to the UCL.

86.    In addition, the SBA Regulations that govern the PPP funds, specifically SBA Interim Final Rule §m [Docket No. SBA-2020-0015] 13 CFR Part 120, Business Loan Program Temporary Changes; Paycheck Protection Program, RIN 3245-AH34, mandated that the PPP Loans be distributed "first-come, first-served." Defendants violated this requirement by failing to process PPP Applications in the "queue" or on a first come, first served basis. Thus, Defendants' conduct was unlawful in violation of the UCL.

HAEGGQUIST & ECK, LLP

**UNFAIR**

87.    A business practice is "unfair" pursuant to the UCL if it is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.

88.    Defendants have engaged in "unfair" conduct toward Plaintiff, members of the Classes, and persons applying for PPP Loans, as set forth above, including by making false statements of material fact with respect to the process for PPP Applications.

89.    Based upon the allegations set forth herein, Defendants have further intentionally disregarded the SBA Regulation that that PPP Loans be made and processed on a "first-come, first-served" basis, and prioritized large businesses and allowed preferred customers or applicants to "cut" the line to the detriment of small business applicants, including Plaintiff and members of the Classes.  Defendants also engrafted additional, unauthorized requirements on persons seeking to apply for PPP Loans, such as that they have had a business checking account as of February 15, 2020.  This conduct violates the CARES Act and the SBA Regulations. This conduct is also unethical, oppressive, unscrupulous, and/or substantially injurious to consumers (such as Plaintiff and members of the Classes), and there is no utility to be served by Defendants' conduct that in any way outweighs the gravity of the harm caused to consumers, Plaintiff, and members of the Classes.

90.    In addition, Defendants' conduct was, and remains, substantially injurious to consumers; is not outweighed by any countervailing benefits to

HAEGGQUIST & ECK, LLP

36

consumers (or to Wells Fargo's competitors); and Plaintiff and members of the Classes could not reasonably avoid the injury caused by Wells Fargo's misrepresentations on how it was processing the PPP Applications of Plaintiff and members of the Classes.

## FRAUDULENT

91.    A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

92.    As set forth above, the Defendants' conduct included affirmative representations about the processing PPP Applications and PPP Loans which were not true. Those representations were made with the intent to generate public good will and to induce consumers (including Plaintiff and members of the Classes) to reasonably rely on those representations.

93.    Defendants' unlawful, unfair, and fraudulent acts and practices, as described herein, have deceived Plaintiff and members of the Classes, and were highly likely to deceive members of the public. Plaintiff relied upon Defendants' misleading and deceptive representations regarding the application and approval process for PPP Loans.  Each of these factors played a substantial role in Plaintiff's decision to attempt to apply, or sign up to apply, for PPP Loans with Defendants, and Plaintiff would not have made such attempts or applied for a PPP Loan with Defendants in the absence of Defendants' misrepresentations.  If Plaintiff and members of the Classes had not waited on Defendants to be able to process PPP Applications (*i.e.* including

Defendants' claimed inability to host an active website "landing page" to a PPP Application), or been caused to rely upon Defendants' promises that the PPP Applications would be processed in a "queue" in the order received by Defendants, Plaintiff and members of the Classes would not have been harmed. The funds to be provided to Plaintiff and members of the Classes pursuant to the PPP were to be used to help keep these businesses afloat by permitting them to pay the approved Expenses detailed herein. Accordingly, and pursuant to California Business and Professions Code §17204, Plaintiff and members of the Classes have suffered monetary and economic loss, and other harm, as a direct result of Defendants' practices as described above. This harm includes being denied PPP Loans, or being prevented and/or delayed in timely applying for PPP Loans, to which they were entitled to apply and/or receive.

94.    As a result of the unfair, unlawful, and fraudulent conduct described above, Defendants have been unjustly enriched at the expense of Plaintiff and members of the Classes. Specifically, Defendants have been unjustly enriched by obtaining revenues and profits that they would not otherwise have obtained (or were permitted to avoid losses) absent their false, misleading, and deceptive conduct.

95.    Plaintiff and members of the Classes seek all monetary and non-monetary relief allowed by law, including restitution of all profits stemming from Defendants' unfair, unlawful, and fraudulent business practices, including declaratory relief, injunctive relief, and other appropriate equitable relief. Pursuant to California

HAEGGQUIST & ECK, LLP

Business and Professions Code §17203, Plaintiff seeks an order from the Court requiring Defendants to disgorge the amounts by which they have been unjustly enriched to Plaintiff and all members of the Classes, and to enjoin Defendants from continuing to violate the UCL as discussed herein and/or from violating the UCL in the future. Otherwise, Plaintiff, the members of the Classes, and the public may be irreparably harmed and/or denied an effective and complete remedy, if such an order is not granted.

96.     Pursuant to California Code of Civil Procedure §1021.5, Plaintiff and members of the Classes are entitled to recover its reasonable costs and attorneys' fees.

## COUNT II

**On Behalf of Plaintiff and Members of the Classes Against All Defendants**
**Violation of California's False Advertising Law ("FAL")**
**California Business and Professions Code §17500, *et seq.***

97.     Plaintiff hereby incorporates by reference the foregoing allegations as if fully set forth herein.

98.     The California False Advertising Law (the "FAL") prohibits unfair, deceptive, untrue, or misleading communications and statements, including, but not limited to, false statements as to the nature of services to be provided.

99.     As alleged herein, Defendants made, or caused one another to make, false and misleading representations to Plaintiff and members of the Classes concerning the nature of the services they would be providing as administrators of the PPP Applications and/or PPP Loans.

39

HAEGGQUIST & ECK, LLP

100.   Defendants knew, or should have known, in the exercise of reasonable care, that they would not process the PPP Applications on a "first-come, first-served" basis or in a "queue" and yet they represented the contrary to Plaintiff, members of the Classes, their customers, and to the public.  Further, Defendants knew, or should have known, that the "focus" of the bank was not on facilitating loans to small businesses with less than 50 employees and nonprofit organizations, yet they represented the contrary to Plaintiff, members of the Classes, their customers, and the public.  Reasonable consumers, such as Plaintiff and members of the Classes, are (and were) likely to be deceived by such representations.

101.   Through Defendants' false representations and unfair acts and practices, Defendants have improperly obtained money or other benefits at the expense of Plaintiff and members of the Classes.  Defendants, upon information and belief, have obtained financial benefits through the retention of preferred customers receiving PPP Loans through Wells Fargo and/or may have avoided loan losses in its portfolio.  As such, Plaintiff requests that this Court cause Defendants to disgorge this money to Plaintiff and all members of the Classes, and to enjoin Defendants from continuing to violate the FAL as discussed herein, and/or from violating the FAL in the future.  Otherwise, Plaintiff, the members of the Classes, and members of the general public may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

102.   Plaintiff and members of the Classes seek declaratory relief, attorneys' fees and costs, and any other just and proper relief available under the law.

## COUNT III

**On Behalf of Plaintiff and Members of the Classes Against All Defendants
Violation of California Civil Code §1573**

103.   Plaintiff hereby incorporates by reference the foregoing allegations as if fully set forth herein.

104.   Defendants, directly and through their agents and employees, knowingly undertook to act on behalf of Plaintiff and members of the Classes by inviting them to apply for PPP Loans through Defendants, and in undertaking to process their PPP Applications.   This undertaking by Defendants gave rise to a duty not to take advantage of Plaintiff and members of the Classes, and not to mislead them to their prejudice.

105.   Defendants, directly and through their agents and employees, by means of their acts, omissions, and concealments, as alleged herein, breached their duty to Plaintiff and members of the Classes.   Plaintiff and members of the Classes were mislead, to their prejudice, by justifiably relying on Defendants to act for their benefit, as Defendants had represented, by affirmatively processing the PPP Applications Plaintiff and members of the Classes submitted in a "queue" in the order received.

106. As a direct and proximate result of Defendants' breach of the duty formed by the undertaking on behalf of Plaintiff and members of the Classes, Plaintiff and members of the Classes suffered financial harm in excess of $5 million.

107. Plaintiff and members of the Classes seek declaratory relief, attorneys' fees and costs, and any other just and proper relief available under the law.

**COUNT IV**

**On Behalf of Plaintiff and Members of the Classes Against All Defendants For Fraud or Deceit (Intentional Misrepresentation)**

108. Plaintiff hereby incorporates by reference the foregoing allegations as if fully set forth herein. Plaintiff asserts this claim pursuant to California Civil Code §1710(1) and common law.

109. Defendants, directly and through their agents and employees, made materially false representations and omissions to Plaintiff and members of the Classes concerning, among other things, Defendants' processing of PPP Applications, Defendants' compliance with the terms of the CARES Act and the SBA Regulations in processing PPP Applications and/or making PPP Loans, and the use of a "queue" or any form of "first-come, first-served" processing the PPP Applications. These misrepresentations and omissions were made in Defendants' press releases, alleged herein, on Defendants' online website/portal, in email communications, and in additional oral representations made to Plaintiff and members of the Classes. These

HAEGGQUIST & ECK, LLP

42

misrepresentations included the suggestion, as a fact, of that which is not true, by one who does not believe it to be true.  *See* California Civil Code §1710(1).

110.   Defendants knew or recklessly disregarded the false and misleading nature of their material misrepresentations and omissions.

111.   Defendants had exclusive knowledge of the foregoing facts, as alleged herein, concerning how Defendants were processing PPP Applications from Plaintiff and members of the Classes.

112.   Defendants made the materially false and misleading statements and omissions for the purpose of inducing Plaintiff and members of the Classes to rely on the representation and submit PPP Applications through Defendants.

113.   Plaintiff and members of the Classes reasonably relied on Defendants' representations and omissions in choosing to submit a PPP Application with Defendants, and they were harmed as a result.  The reliance by Plaintiff and members of the Classes upon Defendants' false representations and omissions was a substantial factor in causing their harm.

114.   As a direct and proximate result of Defendants' materially false and misleading misrepresentations and omissions, Plaintiff and members of the Classes suffered financial harm in excess of $5 million.

115.   Plaintiff and members of the Classes seek declaratory relief, attorneys' fees and costs, and any other just and proper relief available under the law.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

HAEGGQUIST & ECK, LLP

**COUNT V**

**On Behalf of Plaintiff and Members of the Classes Against All Defendants
For Fraud or Deceit (Fraudulent Concealment)**

116.   Plaintiff hereby incorporates by reference the foregoing allegations as if fully set forth herein. Plaintiff asserts this claim pursuant to California Civil Code §1710(3) and common law.

117.   As alleged herein, Defendants owed a duty to Plaintiff and members of the Classes to reasonably disclose facts material to the PPP Application process, and to not hide or obscure facts material to the PPP Application process.

118.   At all relevant times, Defendants possessed and had exclusive knowledge of material facts not known to Plaintiff and members of the Classes, *i.e.* the knowledge of how the PPP Applications were going to be processed, prioritizing large businesses borrowing large amounts of money, or preferred customers, and not on a "first-come, first-served" basis.

119.   At all relevant times, Defendants actively concealed those material facts from Plaintiff and members of the Classes concerning the process for, and steps Defendants would be taking to, process PPP Applications, and intentionally omitted to disclose such facts by intentionally misleading Plaintiff and members of the Classes with affirmative statements that were not true.  *See* California Civil Code §1710(3).

120.   Plaintiff and members of the Classes were unaware that their PPP Applications (or even their ability to make a PPP Application) would not be

44

undertaken by Defendants based on the "queue" or any "first-come, first-served basis", and had they known of the concealed or suppressed facts concerning how Defendants were actually processing PPP Applications, they would have acted differently, including by ceasing the process for applying with Wells Fargo for PPP Loans.

121. As a direct result of Defendants' fraudulent concealment of facts material to the PPP Applications process, Plaintiff and members of the Classes were induced to continue to seek to submit PPP Applications with Defendants, or to make such PPP Applications, and as a proximate result suffered economic and financial harm to in excess of $5 million.

122. Plaintiff and members of the Classes seek declaratory relief, attorneys' fees and costs, and any other just and proper relief available under the law.

### COUNT VI

**On Behalf of Plaintiff and Members of the Classes Against All Defendants For Fraud or Deceit (Negligent Misrepresentation)**

123. Plaintiff hereby incorporates by reference the foregoing allegations as if fully set forth herein. Plaintiff asserts this claim pursuant to California Civil Code §1710(2) and common law.

124. Defendants, directly and through their agents and employees, negligently and/or recklessly made misrepresentations of past or existing material facts to Plaintiff and members of the Classes, as alleged above. These misrepresentations were made

in Defendants' press releases, as alleged herein, online website, email communications, and in additional oral representations made to Plaintiff and members of the Classes.

125.   Defendants knew, or should have known, of the false and misleading nature of their material misrepresentations and omissions, as detailed herein. Defendants made the misrepresentations without reasonable grounds for believing them to be true.  Indeed, Defendants had exclusive knowledge of the foregoing facts alleged herein concerning how Defendants were processing PPP Applications from Plaintiff and members of the Classes.  *See* California Civil Code §1710(2).

126.   Defendants made the material misrepresentations for the purpose of inducing Plaintiff and members of the Classes to apply for PPP Loans through Defendants.

127.   Plaintiff and members of the Classes justifiably and reasonably relied on Defendants' misrepresentations in seeking to complete PPP Applications with Defendants.

128.   As a direct and proximate result of Defendants' misrepresentations, Plaintiff and members of the Classes suffered financial harm in excess of $5 million.

129.   Plaintiff and members of the Classes seek declaratory relief, attorneys' fees and costs, and any other just and proper relief available under the law.

HAEGGQUIST & ECK, LLP

46

1
2
3
4
5
6
7
8
9
10
11
12
13
14

HAEGGQUIST & ECK, LLP

15
16
17
18
19
20
21
22
23
24
25
26
27
28

**COUNT VII**

**On Behalf of Plaintiff and Members of the Classes Against All Defendants
For Fraud or Deceit (False Promise)**

130.   Plaintiff hereby incorporates by reference the foregoing allegations as if fully set forth herein.   Plaintiff asserts this claim pursuant to California Civil Code §1710(4) and common law.

131.   Defendants made a promise to Plaintiff and members of the Classes that Defendants would process PPP Applications based on a "queue" in the order received (*i.e.* "first-come, first-served" basis).

132.   Defendants did not intend to perform this promise when they made the promise.   *See* California Civil Code §1710(4).

133.   Defendants intended that Plaintiff and members of the Classes rely on the promise.

134.   Plaintiff and members of the Classes reasonably relied on Defendants' promise.

135.   Defendants did not perform the promised act, *i.e.* they did not process the PPP Applications in a "queue" in the order received.

136.   Plaintiff and members of the Classes were harmed by Defendants' failure to perform the promised act.

137.   The reliance by Plaintiff and members of the Classes on Defendants' promise was a substantial factor in causing harm to Plaintiff and members of the Classes.

138.   Plaintiff and members of the Classes have sustained damages in excess of $5 million, as alleged herein.   As a result of the misconduct alleged herein, Defendants are liable to Plaintiff and members of the Classes.

139.   Plaintiff and members of the Classes seek declaratory relief, attorneys' fees and costs, and any other just and proper relief available under the law.

## COUNT VIII

### On Behalf of Plaintiff and Members of the Classes Against All Defendants For Breach of Fiduciary Duty

140.   Plaintiff hereby incorporates by reference the foregoing allegations as if fully set forth herein.

141.   Defendants owed a fiduciary duty to Plaintiff and members of the Classes. Defendants' relationship with Plaintiff and members of the Classes, pursuant to the PPP, went beyond the traditional role of a lender of money.  By reason of their fiduciary relationships, the Defendants owed, and owe, Plaintiff and members of the Classes the highest obligations of good faith, fair dealing, loyalty, and due care.

142.   Defendants violated and breached their fiduciary duties to Plaintiff and members of the Classes.

48

143.   Defendants made false, misleading, and deceptive misrepresentations and omissions regarding their administration, processing, and handling of the PPP Applications for Plaintiff and members of the Classes.

144.   The Defendants did not engage in arms-length transactions with Plaintiff, and members of the Classes, because Defendants misrepresented their compliance with the SBA Regulations; misrepresented Defendants' own policy for placing PPP Applications (or expressions of interest) in a "queue" for processing, and omitted to disclose material information as to Defendants' practice and/or policy of favoring certain customers who applied for the PPP Loans and/or for larger PPP Loans.

145.   Defendants unjustly profited from the administration, processing, and handling of the PPP Applications and/or PPP Loans, as detailed herein.

146.   As alleged herein, Defendants did not process the PPP Applications in the manner represented, to the detriment of Plaintiff and members of the Classes.

147.   As a direct and proximate result of the Defendants' breaches of their fiduciary obligations, Plaintiff and members of the Classes have sustained damages in excess of $5 million, as alleged herein.  As a result of the misconduct alleged herein, Defendants are liable to Plaintiff and members of the Classes.

148.   Plaintiff and members of the Classes seek declaratory relief, attorneys' fees and costs, and any other just and proper relief available under the law.

49

**COUNT IX**

**On Behalf of Plaintiff and Members of the Classes Against All Defendants
For Promissory Estoppel**

149.   Plaintiff hereby incorporates by reference the foregoing allegations as if fully set forth herein.

150.   Defendants made written promises to Plaintiff and members of the Classes to process their PPP Applications based upon a "queue", as consistent with the SBA Regulations for the CARES Act. Defendants made this promise in written communications, including corporate issued email.  Defendants' promise was clear and unambiguous in its terms.

151.   Plaintiff and members of the Classes relied on Defendants' representations that their PPP Applications would be processed in a "queue".

152.   The reliance by Plaintiff and members of the Classes on Defendants' was reasonable because the promise to process the PPP Applications was consistent with the SBA Regulations.  Reliance is also reasonable because Plaintiff and members of the Classes were required by Defendants to submit their "interest" or PPP Application online, thus providing Defendants with a means to electronically track the timing of the submission of each expression of interest or request for a PPP Application that was received.   The reliance of Plaintiffs and members of the Classes was also foreseeable in that Defendants' promised to process the PPP Applications in a "queue" was consistent with the SBA Regulations, and Defendants knew (or were on

notice) that the CARES Act discouraged multiple PPP Applications by the same Eligible Recipient.

153.   The reliance by Plaintiff and members of the Classes on Defendants' promise caused a detriment to them, namely the inability to obtain a PPP Loan, or to obtain a PPP Loan in a timely manner.  The injustice caused by Defendants' failure to keep their promise may only be avoided by enforcement of the promise.

154.   Plaintiff and members of the Classes seek declaratory relief, attorneys' fees and costs, and any other just and proper relief available under the law.

**COUNT X**

**On Behalf of Plaintiff and Members of the Classes Against All Defendants For Negligence**

155.   Plaintiff hereby incorporates by reference the foregoing allegations as if fully set forth herein.

156.   Defendants owed a duty to Plaintiff and members of the Classes to comply with the provisions of the PPP and the SBA Regulations when processing PPP Loans.  Defendants also had a duty to exercise reasonable and ordinary care in the use and implementation of its online program to permit Plaintiff and members of the Classes a manner to timely access and submit PPP Applications.  In undertaking to permit Plaintiff and members of the Classes to apply for a PPP Loan through Defendants, Defendants had a duty to ensure that all such persons were given timely

HAEGGQUIST & ECK, LLP

and equal access to the online platform through which to submit a PPP Application to apply for the PPP Loan through Wells Fargo.

157.   As detailed herein, Defendants breached their duty of care in connection with the PPP Application process, including by failing to provide Plaintiff and members of the Classes with timely access to PPP Applications and/or by failing to process the PPP Applications in the order received.

158.   Defendants' violations of law and/or negligence were the direct and proximate cause of the injuries, harm, and economic loss which Plaintiff and members of the Classes have suffered.

159.   Defendants' conduct also constitutes negligence per se. Defendants violated their statutory duties under the FAL and UCL.  In addition, Defendants must comply with SBA Regulations that state that the PPP is to be "first-come, first-served".  Plaintiff and members of the Classes are within the class of persons that the PPP program and these regulations were designed to protect.

160.   Defendants' violations of such statutes and regulations is negligence per se and was a substantial factor in the harm suffered by Plaintiff and members of the Classes, including their submission of applications for loans through the PPP with Defendants who knew the SBA Regulations required processing loans on a "first-come, first-served" basis, yet Defendants failed to process applications they received on this basis, or even on the basis of any form of a "queue" as it had represented to Plaintiff and members of the Classes.

52

161.   As set forth above, such laws were intended to ensure that lenders such as the Defendants processed PPP Loans in accordance with the CARES Act and SBA Regulations, rather than prioritizing among applicants the loans that Defendants determined to process first.

162.   As a result of Defendants' negligence (and negligence per se), Plaintiff and members of the Classes have been damaged in an amount to be proven at trial or alternatively, seek rescission and disgorgement.

163.   Plaintiff and members of the Classes seek declaratory relief, attorneys' fees and costs, and any other just and proper relief available under the law.

### COUNT XI

**On Behalf of Plaintiff and Members of the Classes Against All Defendants For Unjust Enrichment**

164.   Plaintiff hereby incorporates by reference the foregoing allegations as if fully set forth herein.

165.   Defendants have been, and continue to be, unjustly enriched, to the detriment and at the expense of Plaintiff and members of the Classes as a result of Defendants' prioritization of PPP Applications on behalf of its larger or preferred customers, as opposed to Plaintiff and members of the Classes.

166.   Defendants have unjustly benefitted through the unlawful and wrongful collection of fees for generating the PPP Loans (regardless of whether Defendants subsequently donated the amounts to charity), from ingratiating themselves to

53

preferred customers, and from potentially avoiding loan losses on pre-existing loans made to certain customers.   As a result, Defendants continue to benefit to the detriment, and at the expense, of Plaintiff and members of the Classes.

167.   Defendants should not be allowed to retain the proceeds from the benefits conferred upon it by Plaintiff and members of the Classes.  Plaintiff seeks disgorgement of the amounts by which Defendants have been unjustly enriched, and restitution to the Plaintiff and members of the Classes.

168.   Plaintiff and members of the Classes seek declaratory relief, attorneys' fees and costs, and any other just and proper relief available under the law.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of members of the Classes, prays for the following relief:

A.   An order certifying the Classes as defined above, appointing Plaintiff as class representatives for the Classes, appointing Plaintiff's counsel as Class Counsel for the Classes, and requiring Defendants to bear the costs of class notice;

B.   An order enjoining Defendants from administering, processing, or handling PPP Applications or PPP Loans in violation of the CARES Act, SBA Regulations and requirements, or in violation of applicable law, and such further injunctive relief as the Court may order;

C.      An order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Defendants from continuing the unlawful practices as alleged herein, and injunctive relief to remedy Defendants' past misconduct;

D.      An order requiring Defendants to disgorge or return all monies, revenues, and profits obtained by means of any wrongful or unlawful act or practice alleged herein;

E.      An award granting Plaintiff and members of the Classes all recoverable compensatory, statutory, and other damages sustained by Plaintiff and members of the Classes, and all other available relief under applicable law;

F.      Awarding punitive damages pursuant to applicable law;

G.      Awarding Plaintiff and members of the Classes pre-judgment and post-judgment interest as well as reasonable attorneys' fees and expenses incurred in this action (including those pursuant to California Code of Civil Procedure §1021.5);

H.      Awarding any other relief the Court deems just.

### DEMAND FOR JURY TRIAL

Plaintiff demands Trial by jury.

Dated: May 22, 2020                        HAEGGQUIST & ECK, LLP


                                           By:     /s/ Kathleen A. Herkenhoff
                                                   KATHLEEN A. HERKENHOFF

HAEGGQUIST & ECK, LLP