1  Brendan P. Cullen (SBN 194057)
   (cullenb@sullcrom.com)
2  Sverker K. Hogberg (SBN 244640)
   (hogbergs@sullcrom.com)
3  SULLIVAN & CROMWELL LLP
   1870 Embarcadero Road
4  Palo Alto, California  94303
   Telephone:   (650) 461-5600
5  Facsimile:    (650) 461-5700

6
   *Attorneys for Defendants*
7

8

9
                    UNITED STATES DISTRICT COURT
10
                  SOUTHERN DISTRICT OF CALIFORNIA
11

12
   KAREN'S CUSTOM                    )  Case No. 3:20-cv-00956-LAB-BGS
13 GROOMING LLC, a California        )
   Limited Liability Company, On     )  DEFENDANTS' MEMORANDUM
14 Behalf of Itself and On Behalf of )  OF POINTS AND AUTHORITIES IN
   Similarly Situated Businesses     )  SUPPORT OF MOTION TO COMPEL
15 and Individuals                   )  ARBITRATION OR TO DISMISS
                                     )  FOR FAILURE TO STATE A CLAIM
16                     Plaintiff,    )
                                     )
17           v.                      )  Date:        November 2, 2020
                                     )  Time:        11:30 a.m.
18 WELLS FARGO & COMPANY,            )  Courtroom:   14A
   a Delaware Corporation; WELLS     )  Judge:       Honorable Larry Alan
19 FARGO BANK, NATIONAL              )               Burns
   ASSOCIATION; and DOES 1-          )
20 10, Inclusive                     )
                                     )  ORAL ARGUMENT REQUESTED
21                    Defendants.    )
                                     )
22                                   )
                                     )
23 _____   )

24

25

26

27

28

## <u>Table of Contents</u>

<u>Page</u>

PRELIMINARY STATEMENT ............................................................................. 1

BACKGROUND AND ALLEGATIONS OF THE COMPLAINT ........................ 3

ARGUMENT ...................................................................................................... 5

I.  Plaintiff's claims are subject to mandatory arbitration. ................................ 5

II.  Plaintiff lacks standing to bring its claims. ................................................. 9

III.  Each of Plaintiff's claims should be dismissed for failure to state a
claim. ...................................................................................................... 11

    A.  Plaintiff's prioritization theory underlies all of its claims but is
both legally deficient and inadequately pleaded. ................................ 12

    B.  Plaintiff fails to allege that Wells Fargo caused it any harm. ............. 14

    C.  Plaintiff's fraud-based claims are inadequately pleaded. ................... 14

        1.  Plaintiff fails to plead any misrepresentation or omission. ...... 15

        2.  Plaintiff fails to plead scienter or that Wells Fargo
intended to defraud it. ............................................................ 17

        3.  Plaintiff fails to plead that Wells Fargo owed it fiduciary
duties. ..................................................................................... 19

        4.  Plaintiff fails to plead that it relied on Wells Fargo's
alleged misrepresentations. ..................................................... 19

        5.  Plaintiff fails to plead UCL and FAL claims. ......................... 20

    D.  Plaintiff fails to plead its remaining non-fraud claims. ..................... 22

        1.  Plaintiff pleads none of the elements of promissory
estoppel. ................................................................................. 22

        2.  Plaintiff fails to state a claim for negligence. .......................... 23

        3.  Plaintiff fails to plead that Wells Fargo was unjustly
enriched. .................................................................................. 24

CONCLUSION ................................................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adams* v. *Johnson*,
  355 F.3d 1179 (9th Cir. 2004) ..................................................................... 11

*Aliya Medcare Fin., LLC* v. *Nickell*,
  156 F. Supp. 3d 1105 (C.D. Cal. May 26, 2015) ......................................... 18

*Alvarez* v. *BAC Loans Servicing, LP*,
  228 Cal. App. 4th 941 (2014) ...................................................................... 23

*Am. Exp. Co.* v. *Italian Colors Rest.*,
  570 U.S. 228 (2013) ....................................................................................... 5

*Andreoli* v. *Youngevity Int'l, Inc.*,
  2018 WL 1470264 (S.D. Cal. Mar. 23, 2018) .............................................. 15

*Bal* v. *New Penn Fin., LLC*,
  2015 WL 3867984 (C.D. Cal. June 22, 2015) ........................................ 18, 20

*Beckwith* v. *Dahl*,
  205 Cal. App. 4th 1039 (2012) .................................................................... 15

*Bell Atl. Corp.* v. *Twombly*,
  550 U.S. 544 (2007) ..................................................................................... 11

*Bell-Sparrow* v. *SFG\*Proschoicebeauty*,
  2019 WL 1201835 (N.D. Cal. Mar. 14, 2019) ............................................... 8

*Berger* v. *Home Depot USA, Inc.*,
  741 F.3d 1061 (9th Cir. 2014) ..................................................................... 24

*Chern* v. *Bank of Am.*,
  15 Cal. 3d 866 (1976) .................................................................................. 22

*Chowning* v. *Kohl's Dep't Stores, Inc.*,
  735 F. App'x 924 (9th Cir. 2018) ................................................................ 21

*Cisco Sys., Inc.* v. *STMicroelectrics, Inc.*,
  77 F. Supp. 3d 887 (N.D. Cal. 2014) ........................................................... 15

-ii-

*City of Escondido* v. *Gen. Reinsurance Corp.*,
2019 WL 6917983 (S.D. Cal. Dec. 18, 2019) ................................... 17

*Clapper* v. *Amnesty Int'l USA*,
568 U.S. 398 (2013) .................................................................. 10

*Copart, Inc.* v. *Sparta Consulting, Inc.*,
339 F. Supp. 3d 959 (2018) ........................................................ 14

*Daniels* v. *Painter*,
2016 WL 11498957 (C.D. Cal. Sept. 16, 2016) ................................ 6

*Deschaine* v. *IndyMac Mortg. Servs.*,
2013 WL 6054456 (E.D. Cal. Nov. 15, 2013) ................................. 20

*Diaz* v. *Intuit, Inc.*,
2017 WL 4355075 (N.D. Cal. Sept. 29, 2017) .................................. 7

*Digby Adler Grp., LLC* v. *Mercedes-Benz U.S.A., LLC*,
2015 WL 1548872 (N.D. Cal. Apr. 7, 2015) .................................. 18

*Ecological Rights Found.* v. *Pacific Lumber Co.*,
230 F.3d 1141 (9th Cir. 2000) .................................................... 10

*Eiess* v. *USAA Fed. Sav. Bank*,
404 F. Supp. 3d 1240 (N.D. Cal. 2019) ......................................... 9

*First Nationwide Sav.* v. *Perry*,
11 Cal. App. 4th 1657 (1992) ..................................................... 24

*Flintco Pac., Inc.* v. *TEC Mgmt. Consultants, Inc.*,
1 Cal. App. 5th 727 (2016) ........................................................ 22

*Greenley* v. *Avis Budget Grp. Inc.*,
2020 WL 1493618 (S.D. Cal. Mar. 27, 2020) ................................... 8

*Guillermo* v. *Caliber Home Loans, Inc.*,
2015 WL 1306851 (N.D. Cal. Mar. 23, 2015) ................................. 10

*Hambrick* v. *Healthcare Partners Med. Grp., Inc.*,
238 Cal. App. 4th 124 (2015) ..................................................... 15

*Hernandez* v. *Lopez*,
180 Cal. App. 4th 932 (2009) ..................................................... 25

-iii-

*Hodgers-Durgin* v. *de la Vina*,
  199 F.3d 1037 (9th Cir. 1999) ................................................................. 20

*Hoff* v. *Vacaville Unified Sch. Dist.*,
  19 Cal. 4th 925 (1998) ............................................................................ 24

*Holly* v. *Alta Newport Hosp., Inc.*,
  2020 WL 1853308 (C.D. Cal. Apr. 10, 2020) ........................................ 14

*Ileto* v. *Glock Inc.*,
  349 F.3d 1191 (9th Cir. 2003) ................................................................. 11

*Intergulf Constr. Corp.* v. *Hartford Cas. Ins. Co.*,
  2015 WL 5285668 (S.D. Cal. Sept. 9, 2015) ............................................ 5

*Johnson* v. *JP Morgan Chase Bank, N.A.*,
  2018 WL 4726042 (C.D. Cal. Sept. 18, 2018) .......................................... 8

*Jones* v. *Awad*,
  39 Cal. App. 5th 1200, 1210 (2019) ........................................................ 24

*Kellison* v. *First Premier Bank*,
  2018 WL 5880614 (C.D. Cal. Mar. 5, 2018) ............................................. 6

*Kilgore* v. *KeyBank, Nat'l Ass'n*,
  718 F.3d 1052 (9th Cir. 2013) ................................................................... 9

*Landers* v. *Quality Commc'ns, Inc.*,
  771 F.3d 638 (9th Cir. 2014) .................................................................... 11

*In re LinkedIn User Privacy Litig.*,
  2014 WL 1323713 (N.D. Cal. Mar. 28, 2014) ........................................ 22

*Loritz* v. *U.S. Court of Appeals for Ninth Circuit*,
  382 F.3d 990 (9th Cir. 2004) ..................................................................... 2

*Lotsoff* v. *Wells Fargo Bank, N.A.*,
  2019 WL 4747667 (S.D. Cal. Sept. 30, 2019) ..................................... 7, 8

*Lueras* v. *BAC Home Loan Servicing, LP*,
  221 Cal. App. 4th 49 (2013) .................................................................... 23

*Lujan* v. *Defenders of Wildlife*,
  504 U.S. 555 (1992) ................................................................................... 9

-iv-

*Lyles* v. *Sangadeo-Patel*,
225 Cal. App. 4th 759 (2014) .......................................................................... 24

*McGill* v. *Citibank, N.A.*,
2 Cal. 5th 945 (2017) ........................................................................... 7, 8, 9

*Mendez* v. *Bank of Am., N.A.*,
2013 WL 12130584 (C.D. Cal. Sept. 19, 2013) ................................................ 19

*Morrow* v. *Wells Fargo Bank, N.A.*,
2018 WL 6984851 (C.D. Cal. Sept. 18, 2018) .................................................. 17

*Moses H. Cone Mem'l Hosp.* v. *Mercury Constr. Corp.*,
460 U.S. 1 (1983) .............................................................................................. 5

*Nibbi Bros., Inc.* v. *Home Fed. Sav. & Loan Ass'n*,
205 Cal. App. 3d 1415 (1988) ......................................................................... 25

*Nuclear Info. & Res. Serv.* v. *Nuclear Regulatory Comm'n*,
457 F.3d 941 (9th Cir. 2006) ............................................................................. 9

*Nymark* v. *Heart Fed. Sav. & Loan Ass'n*,
231 Cal. App. 3d 1089 (1991) .................................................................. 19, 23

*Palmer* v. *Apple Inc.*,
2016 WL 1535087 (N.D. Cal. Apr. 15, 2016) .................................................. 15

*Pemberton* v. *Nationstar Mortgage LLC*,
331 F. Supp. 3d 1018 (S.D. Cal. 2018) ..................................................... 17, 18

*Profiles, Inc.* v. *Bank of Am. Corp.*,
2020 WL 1849710 (D. Md. Apr. 13, 2020) ............................................*passim*

*Revitch* v. *Uber Techs., Inc.*,
2018 WL 6340755 (C.D. Cal. Sept. 5, 2018) ..................................................... 7

*Rhynes* v. *Stryker Corp.*,
2011 WL 2149095 (N.D. Cal. May 31, 2011) .................................................. 21

*Rossberg* v. *Bank of Am., N.A.*,
219 Cal. App. 4th 1481 (2013) ................................................................. 14, 20

*Sanders* v. *Sutton Funding, LLC*,
2013 WL 12066131 (S.D. Cal. Nov. 12, 2013) ................................................ 15

-v-

*Scripps Health* v. *nThrive Revenue Sys., LLC*,
    2019 WL 4193405 (S.D. Cal. Sept. 3, 2019) ...................................................15

*Shallow* v. *Target Corp.*,
    2015 WL 13782817 (S.D. Cal. Mar. 23, 2015)............................................7, 10

*Sneed* v. *Chase Home Fin. LLC*,
    2007 WL 1851674 (S.D. Cal. June 27, 2007) .................................................12

*Sonner* v. *Premier Nutrition Corp.*,
    2020 WL 4882896 (9th Cir. June 17, 2020) ...................................................21

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
    903 F. Supp. 2d 942 (S.D. Cal. 2012) .......................................................15, 20

*Spencer* v. *DHI Mortg. Co., Ltd.*,
    642 F. Supp. 2d 1153 (E.D. Cal. 2009) ...........................................................19

*Sponheim* v. *Citibank, N.A.*,
    2019 WL 2498938 (C.D. Cal. June 10, 2019)................................................8, 9

*In re Tobacco Cases II*,
    240 Cal. App. 4th 779 (2015)...........................................................................21

*Tomek* v. *Apple, Inc.*,
    2013 WL 394723 (E.D. Cal. Jan. 30, 2013)....................................................22

*Vegas Diamond Props., LLC* v. *Wiggins*,
    2012 WL 1340437 (S.D. Cal. Apr. 18, 2012) .................................................19

*Vess* v. *Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) .........................................................................11

*W. Air Charter, Inc.* v. *Schembari*,
    2017 WL 7240775 (C.D. Cal. Dec. 14, 2017) ................................................22

*Wong* v. *Stoler*,
    237 Cal. App. 4th 1375 (2015).........................................................................15

*Worldwide Travel, Inc.* v. *Travelmate US, Inc.*,
    2016 WL 1241026 (S.D. Cal. Mar. 30, 2016)..................................................22

*Wright* v. *Sirius XM Radio Inc.*,
    2017 WL 4676580 (C.D. Cal. June 1, 2017)......................................................8

-vi-

**Statutes**

Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*............................................................. 5

**Other Authorities**

Interim Final Rule, 85 Fed. Reg. 20811 ............................................................. 3, 12

AAA Commercial Arbitration Rule 7 ........................................................ 6

Fed. R. Civ. P. 9(b) ........................................................... 11, 14,16

-vii-

**PRELIMINARY STATEMENT**

Congress created the Paycheck Protection Program ("PPP") as part of the Coronavirus Aid, Relief, and Economic Security Act, Pub. L. 116-136 ("CARES Act") to assist small businesses facing hardship during the COVID-19 pandemic. The PPP provides $659 billion in funding for loans to help small businesses meet payroll and cover expenses.  The loans, which are forgivable and guaranteed by the Small Business Administration ("SBA"), are not made by the federal government or the SBA, but by private lenders like Wells Fargo.  No bank is required to take part in the PPP, but Wells Fargo elected to participate in order to help small businesses. Wells Fargo also announced that it would not keep any fees earned from PPP loans.

Plaintiff seeks to bring a putative nationwide class action against Wells Fargo asserting 11 different state-law claims based solely on three unremarkable facts:  (1) that Plaintiff first inquired about applying for a PPP loan with Wells Fargo on March 30, 2020, (2) that Plaintiff allegedly was unable to obtain a PPP loan application from Wells Fargo until April 15, 2020, and (3) that Plaintiff applied for a PPP loan on April 16, 2020.  Plaintiff does not allege that it ultimately failed to receive a PPP loan.  Plaintiff also does not allege that it was unable to apply for a PPP loan with any of the nearly 5,000 other PPP lenders throughout the country that were accepting loans during the first round of funding.  Plaintiff does not plead what damages, if any, it purportedly suffered as a result of any delay in obtaining a PPP loan, or how long any such delay was.  And Plaintiff does not plead — except in entirely speculative and conclusory fashion — that Wells Fargo engaged in any wrongful conduct whatsoever.  Plaintiff's claims do not belong in this Court, are inadequately pleaded, and should be dismissed for at least the following reasons.

*First*, all of Plaintiff's claims are subject to mandatory arbitration.  On March 27, 2018, Plaintiff signed a Business Account Application in which it "agree[d] to be bound" by an "account agreement that includes the Arbitration Agreement under which any dispute between [Plaintiff] and [Wells Fargo] relating

1   to [Plaintiff]'s use of any [Wells Fargo] deposit account, product or service will be

2   decided in an arbitration proceeding." (Ex. 1 at 4.[1]) On August 4, 2020, Wells Fargo

3   served an arbitration demand on Plaintiff, which Plaintiff refused. (Ex. 2.) Because

4   Plaintiff's claims fall squarely within the scope of its agreement to arbitrate, they

5   should be dismissed and Plaintiff ordered to arbitrate them.

6           *Second*, even if Plaintiff's claims were not required to be arbitrated,

7   Plaintiff lacks standing to bring them because it has failed to plead that Wells Fargo

8   caused it an injury-in-fact. The sole basis for Plaintiff's alleged injury is that it first

9   inquired about applying for a PPP loan from Wells Fargo on March 30, 2020 but

10  was unable to obtain an online loan application from Wells Fargo until

11  April 15, 2020, and did not submit its loan application until April 16, 2020. (Compl.

12  ¶¶ 26, 54.) Plaintiff does not allege that it did not ultimately obtain a PPP loan,

13  conceding that it could have received funding after April 24, 2020, when $310 billion

14  more in PPP funding became available. Instead, Plaintiff alleges only "that [it] lost

15  the ability to use PPP funding" during a period of less than one month. (*Id.* ¶¶ 59-

16  60.) That allegation, however, is "wholly speculative," *Loritz* v. *U.S. Court of*

17  *Appeals for Ninth Circuit*, 382 F.3d 990, 992 (9th Cir. 2004), because it assumes,

18  without pleading any actual facts, that Plaintiff would have received a loan faster but

19  for Wells Fargo's alleged prioritization of other loan applications. Even if Plaintiff

20  could plead that it was delayed in obtaining PPP funding for less than one month,

21  Plaintiff pleads nothing about how that delay caused it the requisite injury in fact.

22  Plaintiff was also free at any time to apply for a PPP loan with any one of the nearly

23  5,000 other lenders offering PPP loans at the time. Plaintiff accordingly cannot

24  possibly allege that any injury it purportedly suffered from any delay in obtaining a

25  PPP loan is traceable to Wells Fargo as opposed to its own failure to apply for a PPP

26  loan with another lender.

27

28  [1]   All exhibit references are to the exhibits attached to the Declaration of Brendan P. Cullen, dated August 28, 2020.

*Third*¸ even if Plaintiff had standing to bring non-arbitrable claims, Plaintiff fails as a matter of law to state any of its claims.  Plaintiff's state-law claims are all premised on the theory that Wells Fargo prioritized "larger or preferred business banking customers" and thereby harmed customers who supposedly were not prioritized.  (Compl. ¶ 14.)  But, as the only court to have addressed lenders' obligations in processing PPP applications has held, the CARES Act "does not constrain banks" regarding "what order to process applications [they] accept[]." *Profiles, Inc.* v. *Bank of Am. Corp.*, 2020 WL 1849710, at *7 (D. Md. Apr. 13, 2020). Furthermore, even if the CARES Act did require Wells Fargo to lend on a first-come, first-served basis (it did not), Plaintiff has not alleged a single well-pleaded fact that Wells Fargo did not in fact do so.  All of Plaintiff's allegations that Wells Fargo supposedly prioritized "larger or preferred" business customers are based purely on Plaintiff's "belief" and speculation.  Because Plaintiff fails to plead that Wells Fargo actually prioritized "larger or preferred" customers, it necessarily fails to plead that Wells Fargo knowingly concealed or misrepresented this fact.  Plaintiff also fails to plead multiple other required elements of its claims, including injury, scienter, breach of duty, and reliance.  The Complaint should be dismissed.

## BACKGROUND AND ALLEGATIONS OF THE COMPLAINT

The CARES Act was signed into law on March 27, 2020.  On April 2, 2020, the SBA issued an Interim Final Rule ("IFR") to implement the PPP.  85 Fed. Reg. 20811.  The IFR provides a schedule of loan fee percentages that the SBA will pay to lenders for making PPP loans.  Those fee percentages decrease as the loan amount increases:  5% for loans of $350,000 or less; 3% for loans between $350,000 and $2 million; and 1% for loans above $2 million.  *Id.* at 20816.

On April 5, 2020, Wells Fargo announced that it (i) was planning "to distribute a total of $10 billion to small business customers under the requirements of the PPP"; (ii) would focus on serving nonprofits and businesses with under 50 employees, which had "fewer resources" than other businesses; and (iii) would

-3-

1  not retain fees generated from PPP loans.  (Ex. 3 at 1.)  Wells Fargo limited its PPP
2  loans to applicants, such as Plaintiff, with "a Wells Fargo Business checking account
3  as of Feb. 15, 2020."  (Ex. 4 at 1.)  This requirement enabled Wells Fargo to process
4  applications more expeditiously, as it did not need to collect and verify new client
5  information to satisfy its "know your customer" and due diligence obligations.  *See*
6  *Profiles*, 2020 WL 1849710, at *12 (describing as "compelling" the "argument that
7  prioritizing  existing  borrowers  will  expedite  the  processing  of  [PPP]  loan
8  applications").

9       The  initial  rollout  of  the  PPP  by  Congress,  the  SBA,  and  the  U.S.
10  Department of the Treasury was bumpy.  It was not until April 2, the day before the
11  PPP went live, that the SBA issued the IFR implementing the PPP.  For its part,
12  Wells  Fargo  Bank  "mobilized  hundreds  of  Wells  Fargo  employees  and  launched
13  new automation and technology so [it could] process the extremely high volume of
14  [PPP] applications."  (Ex. 5.)  Wells Fargo's efforts were successful:  according to
15  the SBA, as of August 8, 2020, when the PPP closed, Wells Fargo had issued over
16  194,000 PPP loans with an average amount of $54,501, the second lowest among
17  the 15 identified lenders, and little more than half of the overall average loan amount
18  of $101,000.  (Ex. 6 at 6-7.)

19       Contrary to this reality — and based only on Plaintiff's speculative
20  allegations made on "information and belief" — Plaintiff alleges in the Complaint
21  that "Wells Fargo prioritized those PPP Loans that curried favor with larger business
22  customers" rather than "on a 'first-come, first-served' basis."  (Compl. ¶ 62.)
23  Plaintiff  further  alleges  that  it  first  expressed  interest  in  a  PPP  loan  on
24  March 30, 2020, that it "submitted a complete PPP Application to Wells Fargo to
25  obtain a PPP Loan" on April 16, 2020, and that it had not obtained a loan as of that
26  same day, when the first of two rounds of "PPP Loan funds had been depleted."  (*Id.*
27  ¶¶ 34-53.)  Plaintiff acknowledges that only eight days later, on April 24, the federal
28  government made available another $310 billion in PPP funds.  (*Id.* ¶ 59.)  Funds

-4-

remained available until the PPP closed on August 8, 2020, with over $133 billion left unclaimed.  (Ex. 6 at 9.)

**ARGUMENT**

**I.    PLAINTIFF'S CLAIMS ARE SUBJECT TO MANDATORY ARBITRATION.**

Under the Federal Arbitration Act, arbitration agreements are "valid, irrevocable, and enforceable" through "an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."  9 U.S.C. §§ 2, 4.  "[C]ourts must 'rigorously enforce' arbitration agreements according to their terms," *Am. Exp. Co.* v. *Italian Colors Rest.*, 570 U.S. 228, 233 (2013), and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," *Moses H. Cone Mem'l Hosp.* v. *Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).[2]

On March 27, 2018, Plaintiff signed a Wells Fargo Business Account Application and therein "agree[d] to be bound by" the Wells Fargo "account agreement that includes the Arbitration Agreement under which any dispute between [Plaintiff] and [Wells Fargo] relating to [Plaintiff]'s use of any [Wells Fargo] deposit account, product or service will be decided in an arbitration proceeding before a neutral arbitrator as described in the Arbitration Agreement."  (Ex. 1 at 4.)  The account agreement in effect now and at the time Plaintiff applied for a PPP loan includes an arbitration provision, pursuant to which Plaintiff "agree[d]," at Wells Fargo's request, "to submit to binding arbitration all claims, disputes, and controversies between or among Wells Fargo and [Plaintiff]," "whether in tort, contract or otherwise arising out of or relating in any way to [Plaintiff's] account(s) and/or service(s), and their negotiation, execution, administration, modification,

---

[2]    Though a court has discretion to stay the case pending arbitration or to dismiss, where, as here, "it is unclear how long arbitration might take and whether there will be any claims left after arbitration that the parties will need or want to pursue," this Court has opted to dismiss.  *Intergulf Constr. Corp.* v. *Hartford Cas. Ins. Co.*, 2015 WL 5285668, at *2 (S.D. Cal. Sept. 9, 2015).

1    substitution, formation, inducement, enforcement, default, or termination." (Ex. 7

2    at 6.)[3]  The agreement also states that any dispute regarding "a disagreement about

3    this Arbitration Agreement's meaning, application, or enforcement" is subject to

4    arbitration, and that the arbitration will be conducted pursuant to the American

5    Arbitration Association ("AAA") commercial dispute resolution procedures (Ex. 7

6    at 6-7), which in turn provide that "[t]he arbitrator shall have the power to rule on

7    his or her own jurisdiction, including any objections with respect to the existence,

8    scope, or validity of the arbitration agreement or to the arbitrability of any claim or

9    counterclaim," AAA Commercial Arbitration Rule 7.  On August 4, 2020, Wells

10   Fargo served an arbitration demand, which Plaintiff has refused.  (Ex. 2.)

11          Plaintiff's contractual commitment to arbitrate any dispute "arising out

12   of or relating in any way to" its Wells Fargo account or services (Ex. 7 at 6) is broad

13   and covers disputes regarding Plaintiff's PPP loan application to Wells Fargo, which

14   Plaintiff could obtain only as a holder of a Wells Fargo business checking account

15   (*supra* at 4).  *See Kellison* v. *First Premier Bank*, 2018 WL 5880614, at *3 (C.D.

16   Cal. Mar. 5, 2018) ("When courts in [the Ninth] Circuit are confronted with an

17   arbitration clause containing such broad language, 'all doubts are to be resolved in

18   favor of arbitrability.'"); *Daniels* v. *Painter*, 2016 WL 11498957, at *4 (C.D. Cal.

19   Sept. 16, 2016) ("Where the arbitration provision is broad, there is a heightened

20   presumption in favor of arbitration.").

21          Furthermore, any dispute regarding the enforceability and scope of the

22   arbitration agreement has been delegated to the arbitrator.  Courts within the Ninth

23   Circuit have held that if the parties agree to arbitrate pursuant to the AAA Rules, as

24   here, that itself "constitutes clear and unmistakable evidence of the intent to arbitrate

25

26   ───────────────

27   [3]      The account agreement in effect when Plaintiff signed its application includes
     this same language, and provides that Plaintiff agrees to subsequent versions of the
28   agreement by "continu[ing] to use [its] account." (Ex. 8 at 2.)

-6-

1   arbitrability." *Diaz* v. *Intuit, Inc.*, 2017 WL 4355075, at *3 (N.D. Cal.

2   Sept. 29, 2017).[4]

3           Plaintiff's claims also are arbitrable notwithstanding the holding in

4   *McGill* v. *Citibank, N.A.*, 2 Cal. 5th 945, 961 (2017), in which the California

5   Supreme Court held that an arbitration agreement was "invalid and unenforceable"

6   insofar as it "purport[ed] to waive [plaintiff's] right to request in any forum [] public

7   injunctive relief."[5]

8           *First*, Plaintiff cannot seek public (or any) injunctive relief because the

9   PPP concluded on August 8, 2020, and so there is nothing to enjoin.  Indeed, with

10  no plausible "threat of repeated injury to support [its] prayer for injunctive relief,"

11  Plaintiff lacks standing to seek any such relief.  *Shallow* v. *Target Corp.*, 2015 WL

12  13782817, at *4 (S.D. Cal. Mar. 23, 2015).

13          *Second*, because the Arbitration Agreement delegates questions of

14  scope, enforceability, and arbitrability to the arbitrator, the Court can order Plaintiff

15  to arbitration without having first decided that the arbitrator is empowered to issue

16  a public injunction.  *See Revitch* v. *Uber Techs., Inc.*, 2018 WL 6340755, at *5 (C.D.

17  Cal. Sept. 5, 2018) ("Courts have [] found, post-*McGill*, that where there is a

18  delegation provision, as there is here, the public injunctive relief question is reserved

19  to the arbitrator.").

20          *Third*, although one court in this District previously held that Wells

21  Fargo's arbitration agreement is unenforceable under *McGill*, *see Lotsoff* v. *Wells*

---

23  [4]    In a similar PPP-related case against Wells Fargo and involving Wells Fargo's

24  Business Account Agreement, the plaintiff agreed to arbitrate at least the issue of

     arbitrability, and the court closed the case.  *See* Order, *Physical Therapy Specialists,*

25  *P.C.* v. *Wells Fargo Bank, N.A.*, No. 20 Civ. 1190, ECF No. 35 (D. Colo. Aug. 18,

     2020).

26  [5]    Public injunctive relief is "relief that by and large benefits the general public

27  and that benefits the plaintiff, if at all, only incidentally and/or as a member of the

     general public."  *McGill*, 2 Cal. 5th at 955.  By contrast, private injunctive relief

28  "primarily resolves a private dispute between the parties and rectifies individual

     wrongs, and [] benefits the public, if at all, only incidentally."  *Id.*

-7-

*Fargo Bank, N.A.*, 2019 WL 4747667, at *4 (S.D. Cal. Sept. 30, 2019), Wells Fargo has appealed that decision because, among other things, the express terms of the agreement there (and here) permit plaintiffs to seek public injunctive relief in the district court and are therefore consistent with *McGill*.   (*See* Ex. 7 at 7 ("The arbitration requirement does not limit the right of Wells Fargo or you to . . . *[o]btain provisional or ancillary remedies such as injunctive relief*.") (emphasis added).)

        *Fourth*, the *Lotsoff* court's failure to consider whether the plaintiff even sought public injunctive relief, 2019 WL 4747667, at *4, is contrary to the weight of authority in this Circuit holding that *McGill* applies only where the plaintiff actually seeks such relief.[6]

        Here, Plaintiff does not seek public injunctive relief.   Although Plaintiff's Complaint purports to request an injunction prohibiting Wells Fargo from engaging in future violations of California's Unfair Competition Law ("UCL") or False Advertising Law ("FAL") (Compl. ¶¶ 95, 101), it does not seek a public injunction because "a close[] inspection [of the Complaint] reveals that the relief sought is actually intended to redress and prevent further injury to a group of plaintiffs who have already been injured by [Wells Fargo's] allegedly unlawful practices," and that "any benefit bestowed on the public would be incidental." *Johnson*, 2018 WL 4726042, at *7.  The proposed Classes are "not comprised of the general public," *id.*, but instead include only "Eligible Recipients . . . who applied for a PPP Loan with Defendants and whose applications were not processed by Defendants in the order in which they were received by Defendants" (Compl. ¶ 67). Indeed, because only pre-existing Wells Fargo customers were eligible for a PPP loan through Wells Fargo, and because the PPP has concluded, the general public

---

[6]    *See Greenley* v. *Avis Budget Grp. Inc.*, 2020 WL 1493618, at *6 (S.D. Cal. Mar. 27, 2020); *Johnson* v. *JP Morgan Chase Bank, N.A.*, 2018 WL 4726042, at *8 (C.D. Cal. Sept. 18, 2018); *Wright* v. *Sirius XM Radio Inc.*, 2017 WL 4676580, at *10 (C.D. Cal. June 1, 2017); *Sponheim* v. *Citibank, N.A.*, 2019 WL 2498938, at *6 (C.D. Cal. June 10, 2019); *Bell-Sparrow* v. *SFG*Proschoicebeauty*, 2019 WL 1201835, at *5 n.9 (N.D. Cal. Mar. 14, 2019).

1   "has not been subject and will not be subject to any of the allegedly improper"

2   conduct. *Sponheim*, 2019 WL 2498938, at \*5; *see Kilgore* v. *KeyBank, Nat'l Ass'n*,

3   718 F.3d 1052, 1061 (9th Cir. 2013) (holding that there was "no real prospective

4   benefit to the public at large from the [injunctive] relief sought" where the alleged

5   statutory violations had "already ceased"). Accordingly, *McGill* does not apply here

6   and Plaintiff's claims should be ordered to arbitration.[7]

7   **II.   PLAINTIFF LACKS STANDING TO BRING ITS CLAIMS.**

8           Even if Plaintiff could escape its binding agreement to arbitrate, it has

9   failed to plead that Wells Fargo caused it an injury-in-fact, and its claims should

10  therefore be dismissed for lack of standing. "[T]he party invoking federal

11  jurisdiction" and asserting standing "bears the burden of establishing its elements."

12  *Nuclear Info. & Res. Serv.* v. *Nuclear Regulatory Comm'n*, 457 F.3d 941, 951 (9th

13  Cir. 2006). The "irreducible . . . minimum" of standing requires that a plaintiff allege

14  an injury that is "fairly traceable to the challenged action of the defendant." *Lujan*

15  v. *Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal alterations omitted).

16  Plaintiff's complaint falls short of this required jurisdictional showing.

17          As to injury, Plaintiff asserts only that it and class members "lost the

18  ability to use PPP funding during the period from April 3, 2020 to at least April 27,

19  2020," and that they "suffered financial harm . . . and generally lost economic

20  opportunities" as a result.[8]  (Compl. ¶¶ 60, 65, 93.)  This allegation is wholly

21  conclusory — Plaintiff fails to plead any actual facts about what "financial harm" it

22  suffered, how it suffered that harm, or what "economic opportunities" it purportedly

23  lost.  This conclusory pleading is inadequate to plead an injury as required to

---

[7]     At the very least, Plaintiff's claims seeking monetary damages, *i.e.*, all claims
other than under the UCL and FAL, should be ordered to arbitration.  *See*, *e.g.*,
*Eiess* v. *USAA Fed. Sav. Bank*, 404 F. Supp. 3d 1240, 1260 (N.D. Cal. 2019) (claims
for monetary damages held not subject to *McGill* and ordered to arbitration).

[8]     That is all Plaintiff can allege, because, on April 24, 2020, the federal
government made another $310 billion in PPP funding available, and the PPP closed
four months later with over $133 billion unclaimed. (*See supra* at 4-5.)

-9-

establish standing.   *See Shallow*, 2015 WL 13782817, at *3 ("conclusory allegations" are insufficient "to allege injury in fact or causation" to establish standing); *Guillermo* v. *Caliber Home Loans, Inc.*, 2015 WL 1306851, at *10 (N.D. Cal. Mar. 23, 2015) (no standing under UCL where plaintiffs failed to "allege facts to support an inference that they could have avoided increased home loan debt or a damaged credit score if" defendant "had reviewed their loan modification application in under three months").   Plaintiff's allegation is also impermissibly speculative.   Plaintiff simply assumes that it would have received a loan faster but for Wells Fargo's alleged failure to process loans on a first-come, first-served basis, but fails to plead a single factual allegation to support that assumption.   *See Ecological Rights Found.* v. *Pacific Lumber Co.,* 230 F.3d 1141, 1152 (9th Cir. 2000) ("the causal connection put forward for standing purposes cannot be too speculative, or rely on conjecture").[9]

Nor does Plaintiff plausibly plead that its alleged injury (if any) was "fairly traceable" to Wells Fargo's conduct.   Plaintiff acknowledges that it *first submitted* its PPP application on the very day that the first round of PPP funding expired (Compl. ¶ 26), and, to the extent that it faults Wells Fargo for not accepting its application sooner, Plaintiff was of course free to apply for a loan from one or more of the *nearly 5,000* lenders other than Wells Fargo that offered PPP loans during the first round of funding (Ex. 9 at 1).   *See Clapper* v. *Amnesty Int'l USA*, 568 U.S. 398, 418 (2013) ("self-inflicted injuries are not fairly traceable to the [defendant's] purported activities").   Because Plaintiff could have applied with another PPP lender at any time between April 3 and April 27, any delay in obtaining a PPP loan was entirely self-inflicted.

---

[9]   If Plaintiff's theory matched reality, Plaintiff likely would not want for supporting data on which to make allegations — the SBA has published extensive data on all PPP loans, including those issued by Wells Fargo.  (*See* Ex. 6.)

Finally, to the extent that Plaintiff asserts claims based on Wells Fargo's "requirement that only those with a business checking account since February 15, 2020 could apply" for a PPP loan (Compl. ¶ 49), it clearly lacks standing. Putting aside that this requirement is fully consistent with the CARES Act and SBA regulations, and helped to "expedite the processing of loan applications" and implement the "overall CARES Act scheme" in a "more efficient" manner, *Profiles*, 2020 WL 1849710, at *12, Plaintiff in fact met this requirement and therefore could not possibly have been injured by it.

## III.   EACH OF PLAINTIFF'S CLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.

To survive a motion to dismiss, "a complaint must contain sufficient factual content 'to state a claim to relief that is plausible on its face.'" *Landers* v. *Quality Commc'ns, Inc.*, 771 F.3d 638, 641 (9th Cir. 2014) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)). The Court need not "accept any unreasonable inferences or assume the truth of legal conclusions cast in the form of factual allegations." *Ileto* v. *Glock Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003); *see Adams* v. *Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004) ("[C]onclusory allegations of law . . . are insufficient."); *Twombly*, 550 U.S. at 555 (holding that "a formulaic recitation of the elements of a cause of action will not do" and that "[f]actual allegations must be enough to raise a right to relief above the speculative level"). Claims that "sound in fraud," or in which fraud is a "necessary element," must also satisfy Rule 9(b)'s particularity requirement, and "must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess* v. *Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103, 1106 (9th Cir. 2003). "It is established law . . . that Rule 9(b)'s particularity requirement applies to state-law causes of action." *Id.* at 1103.

Plaintiff fails to state a claim under these standards. The theory underlying each of Plaintiff's causes of action — that Wells Fargo did not process

-11-

PPP applications on a first-come, first-served basis — both fails as a matter of law and is inadequately pleaded.  Plaintiff has also failed to plead an injury and other required elements — including a misrepresentation, knowledge, reliance, and a duty — for all of its claims.

### A. Plaintiff's prioritization theory underlies all of its claims but is both legally deficient and inadequately pleaded.

As a threshold matter, neither the CARES Act nor SBA regulations require lenders to process PPP loan applications in the order in which they are received.   Plaintiff's  sole  authority  for  imposing  a  "first-come,  first-served" obligation on PPP lenders is the SBA's statement in a question-and-answer section of its IFR that the PPP is "first-come, first-served."  85 Fed. Reg. 20813.  This statement, however, clearly refers to how the *SBA* — not lenders — will process PPP applications.  The only court to analyze lenders' obligations in processing PPP loans has held that the PPP "does not constrain banks" in "deciding from whom to accept  applications,  or  in  what  order  to  process  applications  [they]  accept[]." *Profiles*, 2020 WL 1849710, at *7.  Plaintiff's UCL and negligence claims, to the extent premised on a purported violation of SBA regulations, therefore fail for this reason alone.[10]  *See Sneed* v. *Chase Home Fin. LLC*, 2007 WL 1851674, at *1 (S.D. Cal.  June  27,  2007)  ("Dismissal  is  warranted  under  Rule  12(b)(6)  where  the complaint lacks a cognizable legal theory.").

Even if prioritizing larger customers were prohibited by the CARES Act or SBA regulations, Plaintiff has failed to plead any facts that support its assertion that Wells Fargo did, in fact, engage in such prioritization.  Rather, Plaintiff merely speculates that this is so based on two snapshots of *aggregate* lending data

---

[10]     *See* Compl.  ¶ 86 (alleging that "Defendants' conduct was unlawful in violation of the UCL" because Wells Fargo violated "SBA Regulations"); ¶ 89 (alleging that Wells Fargo's conduct was "unfair" because it "disregarded the SBA Regulation"); ¶ 159 ("Defendants' conduct also constitutes negligence per se . . . [because] Defendants must comply with SBA Regulations that state that the PPP is to be 'first-come, first-served.'").

-12-

for all PPP lenders (not just Wells Fargo) that show that lenders as a group processed more loans under $150,000 (as a percentage of total loans processed) in the last three days of the first round of funding than in the first ten days. (Compl. ¶¶ 55-57.) From this aggregate data related to *thousands* of PPP lenders, Plaintiff jumps to the conclusion that Wells Fargo prioritized larger PPP applications. That is pure speculation. Even if this data had been specific to Wells Fargo (it is not), it would not even suggest, let alone establish, that Wells Fargo did not process loans on a first-come, first-served basis.

Plaintiff's speculation is also contradicted by more recent SBA data, which shows that Wells Fargo's average loan amount was the second *lowest* among the 15 top PPP lenders, and little more than *half* of the overall average loan size. (Ex. 6 at 6-7.)[11] This is not surprising given that Wells Fargo had no incentive to prioritize larger applications, because, as Plaintiff acknowledges, the bank committed to donating all PPP lender fees it earned. (Compl. ¶ 14.) (Although it is thus irrelevant to Wells Fargo, under the SBA's IFR, lenders receive a *greater* percentage of fees for processing *smaller* loans, such that lenders were incentivized to process as many small loans as possible.) (S*upra* at 3.)[12]

---

[11]    Plaintiff also relies on a LendingTree survey that allegedly "reported that although 60% of the [] respondents applied for PPP Loans, only 5% received funding" in the first PPP round. (Compl. ¶ 58.) That some small businesses — that may or may not have applied through Wells Fargo, and that may or may not have been eligible for a PPP loan at all — reported not obtaining a loan in the PPP's first round does not plausibly allege that Wells Fargo prioritized certain customers.

[12]    To support its claims, Plaintiff also cites a news article, published on April 3 but which was "last visited" by Plaintiff's counsel on May 19, that purportedly includes a "link to a Wells Fargo statement representing that it had already received 'hundreds of thousands of applications' for PPP Loans." (Compl. ¶ 9 n.6.) How, Plaintiff asks, is it possible that Wells Fargo had accepted "hundreds of thousands of applications," but not Plaintiff's application, by April 3 unless it were engaged in some sort of improper prioritization? (*Id.*) The answer is simple. The Wells Fargo webpage linked to in the article *did not include the quoted language on April 3*. Rather, at that time, that webpage informed all customers that Wells Fargo was not yet accepting PPP applications (exactly what Plaintiff alleges it was told by Wells Fargo), that Wells Fargo "anticipate[d] the time it w[ould] take to complete the loan process w[ould] be longer than usual" due to significant customer interest, and that

-13-

### B. Plaintiff fails to allege that Wells Fargo caused it any harm.

For the reasons discussed in Part II, *supra*, Plaintiff's speculative and conclusory allegations of injury are inadequate to plead that Plaintiff suffered damages traceable to Wells Fargo. Because injury is a required element for all of Plaintiff's claims, Plaintiff's entire Complaint should be dismissed on this basis alone. *See*, *e.g.*, *Holly* v. *Alta Newport Hosp., Inc.*, 2020 WL 1853308, at *6 (C.D. Cal. Apr. 10, 2020) ("[A] plaintiff must support her claim for [damages] with something more than [her] own conclusory allegations, such as specific claims of genuine injury."); *Rossberg* v. *Bank of Am., N.A.*, 219 Cal. App. 4th 1481, 1499 (2013) (plaintiff asserting fraud must "allege specific facts not only showing he or she actually and justifiably relied on the defendant's misrepresentations, but also how the actions he or she took in reliance . . . caused the alleged damages").

### C. Plaintiff's fraud-based claims are inadequately pleaded.

Plaintiff asserts eight state law claims (Counts I-VIII) of which fraud is a necessary element or that sound in fraud and thus are subject to the heightened pleading standard of Rule 9(b): (1) violation of the UCL; (2) violation of the FAL; (3) constructive fraud; (4) intentional misrepresentation; (5) fraudulent concealment; (6) negligent misrepresentation; (7) false promise; and (8) breach of fiduciary duty.[13] Plaintiff has failed to plead multiple elements of these claims.

---

"customers m[ight] also [want to] visit the SBA website to identify other SBA lenders." (*See* Ex. 10.)

[13] Plaintiff's UCL claim sounds in fraud to the extent it relies on "fraudulent" conduct, "unlawful" conduct based on a violation of the FAL, or fraud, and "unfair" conduct based on alleged misstatements by Wells Fargo. The only portion of Plaintiff's UCL claim that does not sound in fraud is based on the theory that Wells Fargo's prioritization of larger applicants was "unfair" and "unlawful" because it did not comply with the CARES Act and SBA regulations, but, as discussed *supra* at 12-13, this theory fails as both a matter of law and pleading. To the extent Plaintiff also challenges Wells Fargo's PPP eligibility criteria as part of its UCL claim, it lacks standing to do so, *see supra* at 11, and the requirement is not "unfair" because its utility — "expedit[ing] the processing of loan applications," *Profiles*, 2020 WL 1849710, at *12 — outweighs any harm to small businesses, which could apply through other lenders. *Copart, Inc.* v. *Sparta Consulting, Inc.*, 339 F. Supp. 3d 959, 993-94 (2018) ("The court [] must balance 'the utility of the defendant's conduct against the gravity of the harm to the alleged victim [in deciding whether conduct is

-14-

## 1.    Plaintiff fails to plead any misrepresentation or omission.

Plaintiff first fails to plead a misrepresentation or omission, a required element for each of Counts I-VIII, under any pleading standard, let alone Rule 9(b).

Plaintiff cites eight purportedly false or misleading statements.  In the first two, Wells Fargo employees allegedly represented to Plaintiff that Wells Fargo

unfair under the UCL].'"").    Further, Plaintiff's fact-free allegations that this requirement was unfair (Compl. ¶ 89) are insufficient.  *See Palmer* v. *Apple Inc.*, 2016 WL 1535087, at *7 (N.D. Cal. Apr. 15, 2016) (holding conclusory allegations of unfairness insufficient).

To state a claim under the FAL (or for fraudulent conduct under the UCL), a plaintiff must "plead statements that would likely deceive the reasonable consumer" and "actual reliance."  *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 968 (S.D. Cal. 2012).

Constructive fraud requires "(1) a fiduciary or confidential relationship; (2) an act, omission or concealment involving a breach of that duty; (3) reliance; and (4) resulting damage."  *Sanders* v. *Sutton Funding, LLC*, 2013 WL 12066131, at *9 (S.D. Cal. Nov. 12, 2013).

"The elements of a claim for intentional misrepresentation are (1) a misrepresentation; (2) knowledge of falsity; (3) intent to induce reliance; (4) actual and justifiable reliance; and (5) resulting damage."  *Cisco Sys., Inc.* v. *STMicroelectrics, Inc.*, 77 F. Supp. 3d 887, 897 (N.D. Cal. 2014).

Fraudulent concealment requires (1) a concealment of material fact, (2) which defendant had a duty to disclose to plaintiff, (3) intent to defraud, (4) plaintiff was "unaware of the fact and would not have acted as he or she did if he or she had known" of it, and (5) resulting damage.  *Hambrick* v. *Healthcare Partners Med. Grp., Inc.*, 238 Cal. App. 4th 124, 162 (2015).

"Under California law, negligent misrepresentation is a species of actual fraud."  *Wong* v. *Stoler*, 237 Cal. App. 4th 1375, 1388 (2015).  The elements of negligent misrepresentation are the same as those of intentional misrepresentation except for knowledge of falsity; negligent misrepresentation instead requires a "misrepresentation of fact by a person who has no reasonable grounds for believing it to be true."  *Cisco*, 77 F. Supp. 3d at 897. "[I]t is well-established in the Ninth Circuit that both claims for fraud and negligent misrepresentation must meet Rule 9(b)'s particularity requirements."  *Scripps Health* v. *nThrive Revenue Sys., LLC*, 2019 WL 4193405, at *3 (S.D. Cal. Sept. 3, 2019).

Promissory fraud is identical to a claim for intentional misrepresentation, except that to plead the "misrepresentation" element, the plaintiff must allege that the defendant made a promise it did not intend to fulfill.  *Beckwith* v. *Dahl*, 205 Cal. App. 4th 1039, 1060 (2012).

Breach of fiduciary duty requires "(1) the existence of a fiduciary duty; (2) the breach of that relationship; and (3) damages proximately caused by the breach."  *Andreoli* v. *Youngevity Int'l, Inc.*, 2018 WL 1470264, at *10 (S.D. Cal. Mar. 23, 2018).  Plaintiff's breach of fiduciary duty claim sounds in fraud because the alleged breach is that "Defendants made false, misleading, and deceptive misrepresentations and omissions regarding their administration, processing, and handling of the PPP Applications."  (Compl. ¶ 143.)

-15-

1   was "diligently working on getting the application process live and [] ask[ed] that

2   [Plaintiff] check the website . . . frequently for updates on the program and the

3   application process." (Compl. ¶¶ 36, 38.) Plaintiff suggests that these statements,

4   made on April 2 and 3, were somehow false based on media reports that certain other

5   customers were able to apply for a PPP loan *on April 4 and 5*. (Compl. ¶ 39 n. 17.)

6   This argument is nonsensical. Even if the cited reports are true, they in no way

7   render Wells Fargo's earlier statements, telling Plaintiff that it could apply when the

8   landing page became live, false.

9           Plaintiff next cites an April 5, 2020 press release stating that Wells

10  Fargo would "focus[] [its] efforts under the [PPP]" on "small businesses with fewer

11  than 50 employees and nonprofits" and a statement during an April 14, 2020

12  conference call that the bank was "quickly ramping up [its] processing capacity to

13  respond to the significant demand." (*Id.* ¶¶ 40, 47.) But Plaintiff fails to plead any

14  facts, other than its own speculative and conclusory assertions made on "information

15  and belief," to show that these statements were false. (*See* Compl. ¶¶ 40-41, 46-58.)

16  Such conclusory allegations do not come close to stating a claim, much less under

17  the heightened standard under Rule 9(b).

18          Plaintiff also challenges a statement from Wells Fargo's CFO during

19  the April 14 conference call that the bank was "unconstrained and in a position to

20  help everybody who approaches us." Plaintiff casts this statement as an affirmation

21  that "Defendants *would* 'help everybody' who applied," which Plaintiff asserts was

22  false because Wells Fargo required applicants to have had a business checking

23  account as of February 15, 2020. (Compl. ¶ 49 (emphasis added).) But Plaintiff

24  nowhere alleges that it was aware of this statement — much less that it relied on it

25  in any way. Plaintiff also willfully misreads the content of the statement: Wells

26  Fargo's CFO was responding to a question about whether the Federal Reserve's

27  decision to lift certain growth restrictions on Wells Fargo would allow the bank to

28  make all PPP loans sought by customers. The "constraints" to which the CFO was

-16-

referring were the restrictions imposed by the Federal Reserve, not PPP eligibility criteria imposed by Wells Fargo.  (Ex. 11 at 10.)  Indeed, far from misrepresenting or omitting the eligibility criteria for a Wells Fargo PPP loan, the bank publicly and prominently announced those criteria from the outset.  (*See supra* at 4.)

The remaining three statements that Plaintiff challenges were email notices from Wells Fargo that allegedly represented that Plaintiff "remain[ed] in [its] queue based upon when [Plaintiff] submitted [its] initial interest" and that Wells Fargo was "continu[ing] to work through the queue in order."  (Compl. ¶¶ 43-45.) But Plaintiff has not pleaded a single fact to support its assertion that any of these statements were false.  (*See supra* at 12-13.)[14]

## 2. Plaintiff fails to plead scienter or that Wells Fargo intended to defraud it.

Plaintiff has also failed to plead scienter in support of its intentional misrepresentation claim or that Wells Fargo intended to defraud it, *i.e.*, to induce Plaintiff's reliance, as required by its intentional misrepresentation, fraudulent concealment, negligent misrepresentation, and promissory fraud claims.  *See Pemberton* v. *Nationstar Mortg. LLC*, 331 F. Supp. 3d 1018, 1047 (S.D. Cal. 2018) (defining "intent to defraud" as "the intent to induce reliance on a knowing misrepresentation or omission").   Plaintiff's scienter allegations are wholly conclusory and contain no facts regarding the individual speakers' knowledge of Wells Fargo's processing of PPP applications.  (*See*, *e.g*., Compl. ¶ 110 ("Defendants knew or recklessly disregarded the false and misleading nature of their material misrepresentations and omissions.").)  These allegations cannot withstand a motion to dismiss.  *See Morrow* v. *Wells Fargo Bank, N.A.*, 2018 WL 6984851, at \*4 (C.D.

---

[14]    Similarly, the statements in Wells Fargo's notices do not constitute a "promise" that could support Plaintiff's claim for promissory fraud.  The notices contain no specific promise to Plaintiff that Wells Fargo would release applications in any precise order, or that it would *process* those applications once received in a particular order.   *See City of Escondido* v. *Gen. Reinsurance Corp.*, 2019 WL 6917983, at \*13 (S.D. Cal. Dec. 18, 2019) (dismissing false promise claim where alleged promise lacked "requisite clarity" as to what was specifically promised).

-17-

Cal. Sept. 18, 2018) ("[Plaintiff] attributes knowledge . . . generally to 'WELLS representatives' instead of specific actors.  For her intentional misrepresentation claim, this is not permissible."); *Bal* v. *New Penn Fin., LLC*, 2015 WL 3867984, at *3 (C.D. Cal. June 22, 2015) (dismissing complaint because plaintiff "fail[ed] to allege any facts supporting an inference of scienter").

Likewise, the Complaint simply recites the intent element without pleading any facts to actually establish such intent.  (*See*, *e.g*., Compl. ¶ 112 ("Defendants made materially false and misleading statements . . . for the purpose of inducing Plaintiff and members of the Classes to . . . submit PPP Applications."); ¶ 119 ("Defendants . . . intentionally omitted to disclose such facts…"); ¶ 126 ("Defendants made the material misrepresentations for the purpose of inducing Plaintiff and members of the Classes to apply for PPP Loans."); ¶ 132 ("Defendants did not intend to perform [the] promise when they made [it]").)  These conclusory allegations, too, are insufficient to survive a motion to dismiss.  *See Pemberton*, 331 F. Supp. 3d at 1047 ("[M]ere conclusory allegations that representations or omissions were intentional and for the purpose of defrauding and deceiving plaintiffs … are insufficient.") (internal quotation marks omitted); *Aliya Medcare Fin., LLC* v. *Nickell*, 156 F. Supp. 3d 1105, 1128 (C.D. Cal. May 26, 2015) (conclusory allegation of intent to defraud was insufficient); *Digby Adler Grp., LLC* v. *Mercedes-Benz U.S.A., LLC*, 2015 WL 1548872, *4 (N.D. Cal. Apr. 7, 2015) ("'[C]onclusory statements about' intent to defraud, 'without corroborating factual allegations,' are 'insufficient, standing alone, to adequately allege' a fraud claim.") (quoting *Mohebbi* v. *Khazen*, 2014 WL 2861146, at *11 (N.D. Cal. June 23, 2014)).[15]

---

[15]    Plaintiff concedes that Wells Fargo has pledged to donate to charity any fees it receives from the SBA.  (Compl. ¶ 14.)  Thus, Plaintiff's scienter and intent allegations are not just inadequately pleaded, but entirely implausible.

-18-

### 3. Plaintiff fails to plead that Wells Fargo owed it fiduciary duties or a duty to disclose.

Plaintiff's claims for constructive fraud, fraudulent concealment, and breach of fiduciary duty should also be dismissed because Plaintiff has failed to allege that Wells Fargo owed it any fiduciary or other duty.[16]  California courts have consistently held that the borrower-lender "relationship . . . is not fiduciary in nature." *Nymark* v. *Heart Fed. Sav. & Loan Ass'n*, 231 Cal. App. 3d 1089, 1093 n.1 (1991).  "Absent 'special circumstances' a loan transaction 'is at arms-length and there is no fiduciary relationship between the borrower and lender.'" *Spencer* v. *DHI Mortg. Co., Ltd.*, 642 F. Supp. 2d 1153, 1161 (E.D. Cal. 2009) (quoting *Oaks Mgmt. Corp.* v. *Superior Court*, 145 Cal. App. 4th 453, 466 (2006)).

In an attempt to plead around this bar to its claims, Plaintiff asserts that "Defendants owed a fiduciary duty to Plaintiff" because Wells Fargo's relationship with Plaintiff, "pursuant to the PPP, went beyond the traditional role of a lender of money."  (Compl. ¶ 141; *see also* ¶ 104 (Defendants' "undertaking to process . . . PPP Applications . . . gave rise to a duty."); ¶ 117 ("Defendants owed a duty to plaintiff.").)  But this wholly conclusory assertion fails to "address how it is that [Wells Fargo] exceeded its conventional lending role" to justify a finding of duty.  *Mendez* v. *Bank of Am., N.A.*, 2013 WL 12130584, at *6 (C.D. Cal. Sept. 19, 2013).

### 4. Plaintiff fails to plead that it relied on Wells Fargo's alleged misrepresentations.

Plaintiff likewise fails to plead reliance, which is a required element of all of its fraud-based claims except breach of fiduciary duty.  Indeed, Plaintiff's reliance allegations are incoherent: Plaintiff claims that, "[i]n reliance on Defendants' [allegedly false] statements," it contacted Wells Fargo on

---

[16]   "Duty to disclose" is a required element for a claim for fraudulent concealment.  No such duty arises unless "there exists a confidential relation between the parties or other special circumstances require disclosure."  *Vegas Diamond Props., LLC* v. *Wiggins*, 2012 WL 1340437, at *5 (S.D. Cal. Apr. 18, 2012).

-19-

1   March 30, 2020 to apply for a PPP loan (Compl. ¶ 26), despite the fact that *none* of

2   the allegedly false statements was made until at least April 2.

3           To the extent that Plaintiff bases its claims on the allegation that it

4   waited until April 16, 2020 to apply for a PPP loan and failed to seek a loan from

5   any of the thousands of other PPP lenders at any earlier date in reliance on any

6   statement by Wells Fargo, it has failed to plead this adequately.  California courts

7   require plaintiffs specifically to allege what actions they could have taken but chose

8   not to in reliance on allegedly false statements, and how that forbearance resulted in

9   harm.  *See Rossberg*, 219 Cal. App. 4th at 1500 (finding insufficient the "conclusory

10   allegation" that plaintiffs "could have sold their home" without specific allegations

11   about its value and whether a sale was possible); *see also Deschaine* v. *IndyMac*

12   *Mortg. Servs.*, 2013 WL 6054456, at *4 (E.D. Cal. Nov. 15, 2013) (holding that

13   "bare allegations that the plaintiff would have explored other options or pursued

14   legal action to stop a foreclosure sale [are] insufficient to survive a motion to

15   dismiss," and dismissing fraud claims because plaintiff "d[id] not identify what

16   'other options' he declined to pursue" in reliance on the alleged misrepresentations);

17   *Bal*, 2015 WL 3867984, at *3 (plaintiff's allegation that "in reliance on [defendant]'s

18   promise to consider him for a loan modification he decided not to take any other

19   action to address his default" was insufficient where plaintiff's complaint lacked

20   further facts supporting justifiable reliance, such as that "[defendant] promised to

21   grant the loan modification, []or that he had other viable options to cure the default").

22   Plaintiff's bare, conclusory allegations do not meet this standard.

23        **5.**    **Plaintiff fails to plead UCL and FAL claims.**

24           In addition to Plaintiff's lack of standing and failure to plead reliance,

25   Plaintiff's UCL and FAL claims fail for two additional reasons.

26           *First*, Plaintiff has not "state[d] a sound basis for equitable relief,"

27   *Hodgers-Durgin* v. *de la Vina*, 199 F.3d 1037, 1040 (9th Cir. 1999), which is the

28   only relief available under the UCL or FAL.  *See Sony*, 903 F. Supp. 2d at 970

-20-

(remedies "available to a UCL and FAL claimant" are limited to "restitution or injunctive relief"). Plaintiff has made no effort to allege that it lacks an adequate legal remedy, which is required to obtain equitable relief. *See Sonner* v. *Premier Nutrition Corp.*, 2020 WL 4882896, at *8(9th Cir. June 17, 2020) (holding that district court "did not err in dismissing" UCL claims for equitable relief where plaintiff "fail[ed] to establish that she lack[ed] an adequate remedy at law"). The "compensatory damages [Plaintiff] seek[s] [through its other claims] provide an adequate remedy at law to redress [Plaintiff's] alleged injuries," even if Plaintiff does not ultimately prevail on those claims. *Rhynes* v. *Stryker Corp.*, 2011 WL 2149095, at *4 (N.D. Cal. May 31, 2011) ("Where the claims pleaded by a plaintiff *may* entitle her to an adequate remedy at law, equitable relief is unavailable." (emphasis in original)). Because the PPP program is now concluded and Plaintiff does not and cannot allege that it will apply for a PPP loan now or in the future, it is not even clear what Plaintiff would seek to have this Court enjoin.

Plaintiff also cannot obtain the disgorgement remedy it seeks. Plaintiff requests an order "requiring Defendants to disgorge the amounts *by which they have been unjustly enriched* to Plaintiff and all members of the Classes." (Compl. ¶ 95 (emphasis added).) "Under California law, there are two forms of disgorgement: 'restitutionary disgorgement, which focuses on the plaintiff's loss, and nonrestitutionary disgorgement, which focuses on the defendant's unjust enrichment.' Nonrestitutionary disgorgement is unavailable in UCL actions." *Chowning* v. *Kohl's Dep't Stores, Inc.*, 735 F. App'x 924, 925-26 (9th Cir. 2018) (citation omitted). Even assuming, contrary to its allegations, that Plaintiff is seeking restitutionary disgorgement, Plaintiff does not and cannot allege that it conferred any benefit on Wells Fargo that is now returnable. *See In re Tobacco Cases II*, 240 Cal. App. 4th 779, 790 (2015) ("Restitution is available to 'restore to any person in interest any money or property … which may have been acquired by means of . . . unfair competition.'").

-21-

*Second*, Plaintiff fails to plead additional elements of a claim under the UCL and FAL.  The UCL's "fraudulent" prong and the FAL require Plaintiff to show that "members of the public are likely to be deceived."  *In re LinkedIn User Privacy Litig.*, 2014 WL 1323713, at *7 (N.D. Cal. Mar. 28, 2014); *Chern* v. *Bank of Am.*, 15 Cal. 3d 866, 876 (1976).  Because Plaintiff fails to plead any misstatement (*see supra* at 15-17), Plaintiff cannot possibly demonstrate a likelihood of deception.  *See Tomek* v. *Apple, Inc.*, 2013 WL 394723, at *5 (E.D. Cal. Jan. 30, 2013) (dismissing UCL claim where plaintiff "failed to plead any actionable misrepresentation or omission").  For the same reason, Plaintiff's claim under the "unfair" prong of the UCL — which is based on the allegation that Wells Fargo "ma[de] false statements of material fact with respect to the process for PPP Applications" (Compl. ¶ 88) — fails.  As for the "unlawful" prong of the UCL, Plaintiff must "allege facts showing that the respondent engaged in a business practice that violated a law."  *W. Air Charter, Inc.* v. *Schembari*, 2017 WL 7240775, at *3 (C.D. Cal. Dec. 14, 2017).  Plaintiff bases this claim on fraud, negligence, and violation of the FAL and SBA regulations (Compl. ¶¶ 85-86), but negligence cannot serve as a predicate violation, *see Worldwide Travel, Inc.* v. *Travelmate US, Inc.*, 2016 WL 1241026, at *9 (S.D. Cal. Mar. 30, 2016) ("[V]iolations of the common law . . . are insufficient to satisfy the unlawful prong."), and, for the reasons discussed *supra* at 12-20, Plaintiff fails to plead fraud or a violation of the FAL or SBA regulations.

### D.   Plaintiff fails to plead its remaining non-fraud claims.

Plaintiff's three non-fraud claims — for promissory estoppel, negligence, and unjust enrichment — also fail.

#### 1.   Plaintiff pleads none of the elements of promissory estoppel.

To state a promissory estoppel claim, a plaintiff must allege (1) a promise that is "clear and unambiguous in its terms," (2) that the plaintiff relied on that promise, (3) that the plaintiff's reliance was reasonable and foreseeable, and (4) resulting injury to the plaintiff.  *Flintco Pac., Inc.* v. *TEC Mgmt. Consultants,*

-22-

1  *Inc.*, 1 Cal. App. 5th 727, 734 (2016).  Plaintiff fails to plead any promise (much less

2  a clear and unambiguous one) (*see supra* at 17), reliance (*see supra* at 19-20), or

3  injury (*see supra* at 14).

4  **2.      Plaintiff fails to state a claim for negligence.**

5        Plaintiff likewise fails to allege negligence.   To state a claim for

6  negligence, a plaintiff must show that the defendant owed plaintiff a duty of care,

7  that the defendant breached that duty, and that the breach was a proximate cause of

8  plaintiff's claimed damages.  *Lueras* v. *BAC Home Loan Servicing, LP*, 221 Cal.

9  App. 4th 49, 62 (2013).  Plaintiff fails to plead any of these elements.

10        "The existence of a duty of care owed by a defendant to a plaintiff is a

11  prerequisite to establishing a claim for negligence."  *Nymark*, 231 Cal. App. 3d at

12  1095.  Whether that duty exists is "primarily a question of law."  *Id.*  Plaintiff claims

13  that Wells Fargo "owed a duty to [Plaintiff] . . . to comply with the provisions of the

14  PPP and the SBA Regulations when processing PPP loans," "to exercise reasonable

15  and ordinary care in the use and implementation of its online program," and "to

16  ensure that [Plaintiff] [was] given timely and equal access to the online platform

17  through which to submit a PPP Application" (Compl. ¶ 156), but none of these

18  alleged "duties" is recognized under California law.   A lender has no fiduciary

19  obligations to a borrower (*see supra* at 19), and there is also no general duty of care

20  in this context either.  *Nymark*, 231 Cal. App. 3d at 1095-96.

21        Moreover, an actual lender-borrower relationship is itself lacking in this

22  case, because Plaintiff does not allege that it obtained a loan from Wells Fargo.

23  Though some courts have recognized a duty of care in the handling and processing

24  of loan *modification* applications, *see, e.g.*, *Alvarez* v. *BAC Loans Servicing, LP*, 228

25  Cal. App. 4th 941, 945-52 (2014), such a duty presumes the *existence* of a loan and

26  thus a lender-borrower relationship.  Plaintiff's insistence that a duty of care should

27  also extend to a potential borrower who has merely expressed an interest in applying

28

-23-

1    for a loan would expand lenders' negligence liability far beyond the scope of any

2    duty contemplated by California law.

3          In the alternative, Plaintiff asserts that Wells Fargo was negligent *per*

4    *se* because it violated its "statutory duties under the FAL and UCL" and failed to

5    "comply with SBA Regulations."   (Compl. ¶ 159).   "Under the doctrine of

6    negligence *per se,* compliance with the standard of conduct established by the

7    relevant statute, ordinance, or regulation is adopted as the duty of care."  *Jones* v.

8    *Awad*, 39 Cal. App. 5th 1200, 1210 (2019).  A violation of the applicable provision

9    creates a rebuttable presumption of negligence.  *Id.*  But the presumption only arises

10   "from the violation of a statute which was enacted to protect a class of persons of

11   which the plaintiff is a member against the type of harm which the plaintiff suffered

12   as a result of the violation."  *Hoff* v. *Vacaville Unified Sch. Dist.*, 19 Cal. 4th 925,

13   938 (1998).  As explained (*supra* at 12-13), Plaintiff has failed to plausibly allege

14   that Wells Fargo violated any statute or regulation.

15         **3.    Plaintiff fails to plead that Wells Fargo was unjustly**
           **enriched.**

16         Plaintiff's unjust enrichment claim (like its claim for disgorgement) is

17   likewise deficient.   Under California law, "[t]he elements for a claim of unjust

18   enrichment are [1] 'receipt of a benefit and [2] unjust retention of the benefit at the

19   expense of another.'"  *Lyles* v. *Sangadeo-Patel*, 225 Cal. App. 4th 759, 769 (2014).

20   "The fact that one person benefits another is not, by itself, sufficient to require

21   restitution.  The person receiving the benefit is required to make restitution only if

22   the circumstances are such that . . . it is *unjust* for the person to retain it."  *First*

23   *Nationwide Sav.* v. *Perry*, 11 Cal. App. 4th 1657, 1663 (1992) (emphasis in original).

24   Unjust enrichment therefore both requires "the transfer of money or other benefits

25   from one party to another" and "it requires injustice."  *Berger* v. *Home Depot USA,*

26   *Inc.*, 741 F.3d 1061, 1070 (9th Cir. 2014), *abrogated on other grounds by Microsoft*

27   *Corp.* v. *Baker*, 137 S. Ct. 1702 (2017).  For enrichment to be "unjust," it "must

28

-24-

1   ordinarily appear that the benefits were conferred by *mistake, fraud, coercion* or

2   *request*." *Nibbi Bros., Inc.* v. *Home Fed. Sav. & Loan Ass'n*, 205 Cal. App. 3d 1415,

3   1422 (1988) (emphasis in original).

4        Plaintiff cannot establish that it conferred any benefit on Wells Fargo.

5   *See Hernandez* v. *Lopez*, 180 Cal. App. 4th 932, 938 (2009) ("The [unjust

6   enrichment] doctrine applies where plaintiffs, while having no enforceable contract,

7   nonetheless have conferred a benefit on defendant.").   Plaintiff alleges that Wells

8   Fargo received the following benefits:  the "collection of fees for generating the PPP

9   Loans," that Wells Fargo "ingratiat[ed] [it]sel[f] to preferred customers," and that

10  Wells Fargo "potentially avoid[ed] loan losses on pre-existing loans," (Compl.

11  ¶ 166).   None of these alleged benefits, however, came from Plaintiff.   Indeed,

12  having failed to plead that its PPP application was approved (such that Wells Fargo

13  would have received fees from the SBA associated with a loan to Plaintiff), Plaintiff

14  fails to identify any alleged benefit that it conferred on Wells Fargo.  Even if Plaintiff

15  had properly alleged that Wells Fargo received benefits, it could not show that

16  retention of any alleged benefits would be "unjust," because Plaintiff fails to plead

17  any violation of the CARES Act or fraudulent conduct.

18                    **CONCLUSION**

19        For the foregoing reasons, the Court should order Plaintiff's claims to

20  arbitration and dismiss.

21  Dated:    August 28, 2020

22                              */s/ Brendan P. Cullen*
                               Brendan P. Cullen (SBN 194057)
23                              (cullenb@sullcrom.com)
                               Sverker K. Hogberg (SBN 244640)
24                              (hogbergs@sullcrom.com)
                               SULLIVAN & CROMWELL LLP
25                              1870 Embarcadero Road
                               Palo Alto, California  94303
26                              Telephone:  (650) 461-5600
                               Facsimile:   (650) 461-5700

27                              *Attorneys for Defendants*

28

-25-

**CERTIFICATE OF SERVICE**

I certify that on August 28, 2020, I filed the foregoing document with the Clerk of Court for the United States District Court, Southern District of California, by using the Court's CM/ECF system, and also served counsel of record via this Court's CM/ECF system.

*s/ Brendan P. Cullen*
Brendan P. Cullen